## EDWARD HOUGHTON *vs.* LEWIS PAGE.

Any interest on money loaned, was, at common law, unlawful.

But that principle of the common law is not applicable to our state of society ; and, by any part of the common law in force here, no rate of interest is unlawful, unless so great as to become unconscionable.

A contract, made in Massachusetts by its own citizens, and there to be performed, and whose whole consideration was interest over six per cent. per annum on another contract, must be governed by the *lex loci contractus,* and is void by the statute of that state against usury.

Such contract, though void by a penal statute only, cannot be enforced here.

THIS was an action of assumpsit on a promissory note, payable to *Thomas Mason,* or order, and by him endorsed to the plaintiff.

At the trial here, October term, 1818, under the general issue, it appeared in evidence, that *Thomas Mason* was still the party in interest, and that he and the defendant had long been inhabitants of the state of Massachusetts.

The note, also, was executed in that state to secure a sum of money, which the jury found was composed altogether of interest over the rate of six per cent. per annum, on another contract between these parties ; that the rate of interest agreed to be paid on said contract was twelve per cent. ; and that no part of this note being in truth for agency or other services, it was, by a penal statute of Massachusetts, wholly usurious and void.

A verdict was then entered for the defendant, under the direction of the court ; and the plaintiff moved for a new trial, on the ground that the contract was void by means of a penal statute only, and that such a statute of another state could not be enforced here.

The action stood continued nisi for advisement ; and afterwards at Grafton, May term, 1819, judgment was rendered.

*J. C. Chamberlain & Allen*, counsel for the plaintiff.

*Kimball & Wilson*, for the defendant.

WOODBURY J. delivered the opinion of the court.

If the note, which is the subject of the present action, must be pronounced void, it arises from the circumstance, that its consideration was unlawful, either by the common law, or by such a statute as we ought to notice and enforce.

But we are not aware of any principles of the common law, adopted in any quarter of this country, which, on the facts of the case, would warrant us to pronounce the note void.

It is true, that, in conformity to the canons of the church, all interest whatever upon money loaned was long prohibited in England.(1)

To take it, was, also, *in foro conscientiæ*, punished as a crime, and not only subjected the offender to a forfeiture of all his estate ; but, in the " *Mirror of Justices* 191 and 248," one of the first English law books extant, it is lamented, as " an abusion of the common law," that the offender was not likewise deprived of christian burial.

Our privileged cases of loans of cattle, grain, &c. at an extraordinary increase,(2) were equally denounced at common law.

The prejudices on this subject have doubtless been embittered by the circumstance, that, anciently, Jews were the principal money lenders ; and such is still the extent of those prejudices, as hardly to be accounted for, except on the belief, that interest is prohibited by the scriptures as a moral offence, or that associations are continued, which have some connection with the fulfilment of prophecy against the persecuted race of Israel. Even as late as the reigns of Henry VII., of Edward VI., and of Mary, when literature had so long waked from her slumbers, that some correct views in political science would naturally dawn upon the world, every rate of interest was forbidden by express statute.

Houghton
*vs.*
Page.

(1) 1 Wils. 290.

(2) 1 N. H. Laws 287.

It therefore follows, that, if the common law of England concerning interest should be adopted, we must hold void all contracts for any quantity of interest, however small and reasonable. But, in this enlightened age, such a rule could no more be tolerated than the absurd principles of the common law concerning witchcraft and heresy.

There can be in force here only those principles of the common law, which have been expressly adopted; or which, being applicable to our state of society and of jurisprudence, and founded on axioms of intelligent reason, may be considered as impliedly binding. *Chipman's Rep.* 121.—6 *John. Rep.* 423.—3 *Wheat.* 365.—15 *John.* 115.—2 *Burr's Trial* 404.—4 *Burrow's Rep.* 2343.—*Doctor & Student* 64, 14, 161.

Contracts, however, may be void at common law, because unconscionable and oppressive; and there seems to be nothing in the principles of this rule undeserving adoption. 12 *Mass. Rep.* 365, *Baxter et al. vs. Wales.*—*Cowp.* 116, *Floyer vs. Edwards*, (note) *Plumb vs. Carter*; 796, *Jestons vs. Brooke.*—8 *Mass. Rep.* 258, *Cutler vs. How.*

Yet what rate of interest should be deemed contrary to good conscience, and in itself unjust, depends so much upon local usage, the quantity of monied capital, the particular demand for it at particular times, the distresses or exigencies of both parties, and numberless other circumstances, that a jury alone can pronounce understandingly on the question, and they, only after a full view of all the circumstances in each case. These circumstances, so widely different in different ages, in different countries, and under different commercial regulations, have probably given rise to much of that diversity of opinion, which has prevailed on the subject of interest; and a full consideration of them might well be expected every where to impose some little check on the invidious spirit of legislation against usury.

The reasonings on this subject need not be detailed from *Hume, Adam Smith,* and others; because the changeable value of money is so obvious, and the contrariety of opinion so great on the subject of interest, as to render it unwise, if

not impossible for us, by any abstract rule, to decide what quantity is in each case unconscientious.

How could a court hold, that some particular inflexible rate of interest should always, at common law, or under common law principles, be held oppressive ; when the Koran and the Old Testament, *Aristotle* and the *Ancient Fathers,* and even more modern civilians, such as *Domat* and *Pothier,* have condemned any interest whatever, and one of them(1) declared " every covenant of commerce, whereby interest " is taken for a loan"—" a criminal usury, most piously con-" demned by the law of God, and that of the Church, and " most justly punished by the ordinances ;" while, on the contrary, Lord *Bacon* says, " that opinion must be sent to " Utopia ;" and *Solon, Locke, Turgot, Bentham,* and others, have contended, that, as a general principle, the rate of interest should be limited only by contract.

When in practice, at some eras, not only England, but Rome, France, Turkey, and our Plymouth ancestors, enacted express laws against all interest ; while other governments, such as Holland, and our new states of Mississippi and Alabama,(2) have permitted any interest upon which the parties might agree. When, also, the rate of interest, as limited by statute, has, in Europe, varied from five per cent. to twelve ; in America, from six to eight ; and, in Asia, from six to fifty.

But, though the court, in the present case, would not be warranted to pronounce the rate unconscientious on any liberal application of common law principles,(3) yet the rate has been found by the jury to be void under a penal statute of Massachusetts ; and the remaining question is, whether the operation of that statute can here be noticed and enforced.

In the examination of this point, it is unnecessary to adduce argument or authority in favor of the well settled rule, that the nature and effect of contracts are governed by the *lex loci contractus.*

The present note, therefore, having been made in Massachusetts, and being by a statute of that state void, it cannot

(1) 1 Domat b. 1, t. 6, p. 131.

(2) Seybert's Statis. 553.

(3) 2 Chitt. Cr.L.549 note.

Houghton
*vs.*
Page.

be collected here, unless it fall within some established exception to the general rule on the *lex loci*.

But no fact appears in the case to bring it within the exception which exists, when the contract was intended to be performed in a state, other than that where it was made. 2 *John. Ca.* 361.—8 *John.* 192.—2 *Mass. Rep.* 89.—3 *Mass. Rep.* 99.—2 *Burr.* 1078.—1 *Bos. & Pull.* 142 *note.*—4 *Maul. & Selw.* 150.*

Nor is the objection within the exception as to disputes concerning the mere form of the pleadings, and not concerning the nature and effect of the contract itself. 1 *Gallison* 376.—1 *John. Cases* 139.—2 *John. Rep.* 342.—1 *Hen. Bl.* 135.—2 *East* 455.—13 *Mass. Rep.* 1, 18.

Nor within the exception, which exists, when the contract, on account of its subject-matter, must operate elsewhere, as a deed or devise of land situated in another state. 2 *Gallison* 330.—7 *Cranch* 115.—3 *Wheat.* 212.—1 *Wm. Bl.* 246, 259.

(1) Cow. 343.–
1 John. Rep.
94 semb.
(2) 2 D. & E.
241, Alves vs.
Hodgson.

Nor within the exception, which, in some cases, is held to exist,(1) and in others not to exist,(2) when the contract is void, only by the revenue laws of the state, where it was made. 1 *Wm. Bl.* 246.

Nor do we apprehend it to fall within the exception, principally relied on, that the penal statutes of one state cannot be enforced in another state. 3 *D. & E.* 733.—5 *Es. Ca.* 173 *note.*—2 *John. Ca.* 363.—14 *John. Rep.* 340.

This exception is often laid down in language too broad; and the principles, on which it rests, do not, in our opinion, extend to the present case.

As applied to the validity of the contract itself, the statutes, where it was made, whether penal or not, seem to have equal force; and the rate of interest there prescribed has always been recognized and enforced where the contract is sued. 1 *Wm. Bl.* 236.—2 *Burr.* 1094.—2 *D. & E.* 52.—1 *Equi. Ca. Ab.* 289.—2 *John. Rep.* 356, 506.—15 *John. Rep.* 183.—12 *Mass. Rep.* 4.†

But as applied to the remedy on contracts, no foreign

---

* 17 John. Rep. 511.    † 17 John. Rep. 511.

statutes, whether penal or otherwise, are enforced ; and the cases of *Schovill vs. Canfield*,(1) and of *Folliott vs. Ogden*,(2) are, on examination, only an illustration of this point.

In *Vanscaik vs. Edwards*,(3) the precise question now under consideration arose ; but none of the court, save *Kent, J.*, gave an explicit opinion, and he held that the note was void.

The extent of the exception seems to be only this, that as penal statutes are a part of the criminal jurisprudence of a country, their operation and punishment and breach are all local. *Vattel b.* 1, *ch.* 19, *sec.* 232.

Hence when broken, whether at home or abroad, no prosecution can be instituted abroad for the penalty. This is too well settled, as to crimes, to need illustration or precedents.

But contracts of the kind now in suit are personal, and their breach can be punished abroad as well as at home ; and if their consideration was void by laws well known to the parties ; laws in force where the parties lived, and the contracts were executed ; we see no reason to take the construction of their nature and effect out of the general rule on the *lex loci*, and, by a transportation over the boundaries of the state, metamorphose an agreement, which, in its creation, was corrupt and null, into an agreement pure and actionable.

It is true, also, that " as the laws of foreign countries are " not admitted *ex proprio vigore ;* but only *ex comitate,* the " judicial power will exercise a discretion with respect to " the laws they are called upon to sanction ; for, if they " should be manifestly unjust, or calculated to injure their " own citizens, they ought to be rejected." 13 *Mass. Rep.* 6, *Blanchard vs. Russell.*—2 *Mass. Rep.* 89.—13 *Mass. Rep.* 24, 147.—15 *Mass. Rep.* 419.—1 *John. Ca.* 140.—1 *Gallison* 375.—*Cowp.* 344.—2 *Burr.* 1084.

But if these remarks can be extended to laws affecting the consideration of contracts, the statute of Massachusetts, which forbids more than six per cent. interest upon money, however doubtful its expediency, could not be pro-

Houghton
*vs.*
Page.

(1) 14 John.
Rep. 340.
(2) 1 Hen. Bl.
135, and 3 D.
& E. 726.
(3) 2 John.
Cases 363.

nounced unjust and contrary to good morals, or injurious to our citizens, while a similar law exists in our own statute book.

*Judgment on the verdict.*