# THE STATE *vs.* BURNHAM & a.

The common law as to conspiracy is in force in this State, so far as it is not repugnant to our institutions.

A conspiracy is a confederacy to do an unlawful act, or a lawful act by unlawful means, whether to the prejudice of an individual or of the public, and it is not necessary that its object should be the commission of a crime.

Where the object to be attained by the conspiracy is lawful, the illegal means must be stated and proved.

But it is not necessary that the illegal means should be indictable offences. It will be sufficient if they be fraudulent and immoral. The gist of the offence is the conspiracy.

But whether a conspiracy to effect a lawful purpose be an indictable offence in this State, if the means used be no otherwise illegal than as they are made so by the conspiracy, *quœre?*

An indictment for a conspiracy alleged that the respondents, fraudulently contriving to procure the election of certain persons as directors of an insurance company, and thereby to cause themselves to be employed in the service of the company, fraudulently conspired to induce persons, by issuing to them fraudulent policies of insurance, to appear at the annual meeting of the company and vote for directors.

*Held*, that the ultimate object of the respondents, that is, to procure themselves to be employed by the company, was lawful.

*Held*, also, that the allegation of *issuing* fraudulent policies, was proved both by evidence that the respondents procured the directors to issue them, and also by evidence that the respondents, after they were issued, delivered them to the insured.

*Held,* also, that the means were fraudulent, immoral and illegal, where it appear-
ed that the respondents agreed with the insured that the policies should be held
and treated as mere nullities for every purpose but that of authorizing the
holders to vote thereon at the annual meeting, although the respondents agreed
also that the policies should be duly approved by the requisite number of di-
rectors, not cognizant of the intended fraud, upon applications in regular form,
and although the policies might be binding on both parties.

INDICTMENT, for a conspiracy. It was alleged that on the
first day of January, 1841, there was a body politic in this State
called the Rockingham Mutual Fire Insurance Company; that
they had power, at their annual meeting on the first Wednesday
in August, to choose a board of directors ; that the respondents,
with other persons unknown, fraudulently contriving to procure
the election of certain persons as directors of the company, and
thereby to cause themselves to be employed in the service of the
company, and to make gain and profit thereby, on the first day
of July, 1841, did fraudulently conspire and combine among
themselves to procure and induce sundry persons, by fraudulently
pretending to make and issue to them fraudulent policies of in-
surance, to appear at the annual meeting of said company and
vote for directors against and without right, to the great injury
of the company, &c.

The jury found the respondents guilty, and their counsel took
the following exceptions in arrest of judgment, and to the ver-
dict :

Because all the policies proved to have been issued or procur-
ed by the respondents, were legal and valid policies, binding on
both parties, and not such as were alleged in the indictment.

Because the court charged the jury, in substance, that the
approval of the policies, alleged to have been fraudulently issued,
upon applications in regular form, by a competent number of di-
rectors, who had no knowledge that they were not actual con-
tracts of insurance, if the design of the respondents was to im-
pose upon the directors, in procuring the policies, would not be
conclusive evidence in favor of the respondents.

Because the court instructed the jury, in substance, that if
they believed the respondents originally agreed and intended that
the policies in question should be held and treated as mere nul-

lities, for every purpose other than that of authorizing the holders to vote thereon at the annual meeting, the charge was sustained, though the respondents agreed and intended that the policies should, in fact, be duly approved by the requisite number of directors not cognizant of the intended fraud, and though the policies might thus in fact be good and binding on the parties thereto.

Because, if the evidence tended to prove any conspiracy by the respondents, it was a conspiracy to procure and cause policies to be made and issued by the proper officers, and not to make and issue them themselves.

*Bell*, for the respondents. The alleged purpose of the respondents was to procure persons to vote without right, by issuing false policies. There is no precedent of such an indictment, and no evidence to support it.

The law of conspiracy was originally applied where individuals had been injured by the abuse of legal process. It was then extended to combinations producing general public mischief, and next, to combinations to defraud individuals of their property. This last class depends on cases decided since our Revolution. Combinations among workmen belong to the second class, and the law relating to them is not applicable to the state of society in this country.

The definitions of a conspiracy are very vague and indefinite. Even an agreement among bidders at an auction to bid only on certain articles, and then make a division, has been held to be a conspiracy. *Levi* vs. *Levi*, 6 *C. & P.* 239. But an indictment will not lie for a conspiracy to marry. *Rex* vs. *Edwards*, *Str.* 707. Or to commit a trespass upon property. *Rex* vs. *Turner*, 13 *East* 228. The courts in Massachusetts have gone back on this subject, as is shown by the Journeymen Bootmakers' Case, *Commonwealth* vs. *Hunt*, 4 *Met.* 111. Such a case has been held indictable in England. 2 *Starkie* 489 ; 1 *Moody & Rob.* 179.

The charge of the court as to the evidence necessary, was erroneous. The means, that is the using false policies, must be

State *v.* Burnham.

both stated and proved. *The People* vs. *Eckford,* 7 *Cowen* 535 ; *Lambert* vs. *The People,* 9 *Cowen* 578 ; *Article* 15, *Bill of Rights.* The means stated, is the using illegal and fraudulent policies. The defendants issued no policies. The contracts were made by the directors, the delivery only was by the defendants. This is not *issuing* them, which is an act of the corporation, and the respondents did not make them. The policies were not false or fraudulent, as between the company and the insured. The indictment is not for making fraudulent use of the policies, nor for a combination to surrender good policies, after having used them for voting. The company were not injured by the votes of those who had valid policies, and they could not avail themselves of any intention on the part of the insured to surrender their policies. The charge of the court was too broad, because it was said that although the policies might be valid, still an indictment might be sustained, and although the policies might have been approved by the directors.

*Christie,* for the respondents. The weight of authority is that the means must be set out, and if stated, the allegation must be proved as laid.

As to the third exception, the indictment alleges that the respondent procured persons to vote without right. But if the policies were valid and binding, they had a right, and the charge is that even if they had a right to vote, the defendant might be guilty. This means, in other words, that a man who has a right to vote, might vote without right. The indictment says that the policies were false and forged, but the instruction was that if the policies were good the defendant might be found guilty.

*French,* County Solicitor, for the State. If the conspiracy be well alleged, the means stated are immaterial, and they may be rejected as surplusage. *Commonwealth* vs. *Tibbets,* 2 *Mass.* 536. Although the law is not anxious to convict the innocent, it does not desire that the guilty should escape. An offence is clearly charged here, and in such case merely formal matters may be disregarded. *The State* vs. *Hascall,* 6 *N. H. Rep.* 358 ; *The*

*State* vs. *Buckman*, 8 *N. H. Rep*. 203. It is unnecessary to allege or to prove that any such acts were done. The offence charged is the conspiracy, and the acts are merely evidence of it. *Commonwealth* vs. *Davis*, 9 *Mass*. 415. The indictment does not allege that any policies were issued. The respondent may have conspired to do the act by false policies, and may have accomplished it by true ones. The policies may have been in form correct, but if they were designed merely for the purpose of manufacturing voters, and then to be surrendered, the conspiracy is proved. We have shown them to be false though correct in form, for they are false if made with a corrupt motive. It is alleged that there is no such crime as that alleged. The authorities are collected in 3 *Ch. Cr. Law* 1139 ; *Vertue* vs. *Lord Clive*, 4 *Burr*. 2472.

*Bartlett*, in reply. The English common law has not been adopted here, except in the case of a conspiracy to do an illegal act.

Here the conspiracy is only to elect to office persons whom they approved of. It was not to do an injurious act to any body.

It appears only that the defendant was *electioneering*. Suppose he had procured legal voters to come into a town to vote, surely that would not be an indictable offence, even if he had agreed with others to do so.

We cannot reject the allegation as to the means that were used ; for if we do, nothing will be left but a charge that the defendant used fair means to procure an election.

GILCHRIST, J. The allegations in the indictment in relation to which the questions arise, are that the respondents conspired to induce sundry persons, by issuing to them fraudulent policies of insurance, to appear at the annual meeting of the company, and vote for directors without right.

The first exception is, because the policies were legal and valid, and binding on both parties.

From the second and third exceptions we understand the court to have instructed the jury that the approval of the policies in

regular form by the directors, if the design of the respondents were to impose upon the directors in procuring the policies, would not be conclusive evidence in favor of the respondents; that if the jury believed the respondents intended that the policies should be treated as mere nullities, for every purpose but that of enabling the holders to vote, the charge would be sustained, though the respondents agreed that the policies should be duly approved, and the directors were not cognizant of any fraud, and though the policies might be binding upon the parties.

The fourth exception is, that the conspiracy, if any existed, was to procure policies to be issued by the proper officers, and not to cause them to be issued by the respondents.

An examination of all the cases on the subject of conspiracy would be a work of considerable labor, although, excepting for that reason, the subject is not one of much intrinsic difficulty. General definitions of the offence are given in numerous cases, and they are sufficiently precise to enable us to apply the law to the case now before us.

In the first place, we have no doubt that a conspiracy is an indictable offence in this State. It is punishable at common law, its punishment is not repugnant to our institutions, and it is an offence productive of as much injury, and as deserving reprehension under one form of government as another. The case of the *State* vs. *Rollins*, 8 *N. H. Rep.* 550, settles that the body of the common law, and the English statutes in amendment of it, so far as they were applicable to our institutions and the circumstances of the country, were in force here upon the organization of the provincial government, and have been continued in force by the Constitution, so far as they are not repugnant to that instrument, until altered or repealed by the legislature.

Combinations against law or against individuals are always dangerous to the public peace and to public security. To guard against the union of individuals to effect an unlawful design, is not easy, and to detect and punish them is often extremely difficult. The unlawful confederacy is, therefore, punished to prevent any act in execution of it. This principle is the foundation of the adjudged cases upon this subject. But the law by no means

intends to exclude society from the benefits of united effort for legitimate purposes, and such as promote the well being of individuals or of the public. It uses the word *conspiracy* in its bad sense. /An act may be immoral without being indictable, where the isolated acts of an individual are not so injurious to society as to require the intervention of the law. But when immoral acts are committed by numbers, in furtherance of a common object, and with the advantages and strength which determination and union impart to them, they assume the grave importance of a conspiracy, and the peace and order of society require their repression. ' The existence, therefore, and execution of the law against conspiracies may, in certain contingencies, be as important as the enforcement of any other law for the punishment of offences, and it requires but little argument to demonstrate that such a law may be necessary under any system of government.

We do not propose to go any farther than this case requires, in defining the offence of conspiracy. From its nature, no comprehensive rule can be laid down which shall include all instances of it, and we must rest, therefore, on the individual cases decided, which depend generally on particular circumstances. 3 *Ch. Cr. Law* 1140. But the authorities agree in stating that a conspiracy is a confederacy to do an unlawful act, or a lawful act by unlawful means, whether to the prejudice of an individual, or of the public, and that it is not necessary that its object should be the commission of a crime. *Hawk., B.* 1, *ch.* 72; 3 *Ch. Cr. Law* 1139; 2 *Russ. on Cr.* 1800; *Archb. Cr. Pl.* 390; *Commonwealth* vs. *Judd,* 2 *Mass.* 329; *Commonwealth* vs. *Hunt,* 4 *Met.* 111. The same definition is given by Mr. Senator *Stebbins,* in the case of *Lambert* vs. *The People,* 9 *Cowen* 578, whose opinion contains a very full and able exposition of the authorities. And he pointedly remarks that the offence is one which with some propriety may be said to consist in an artful combination and contrivance to produce the injuries consequent upon other crimes, in a manner calculated to elude the provisions and restraints of criminal law.

Whether this indictment charges the respondents with a conspiracy to do an unlawful act, is a question which does not arise,

and has not been made upon the argument. We assume, there-fore, that the ultimate object which the respondents had in view was not illegal. Their purpose was to procure the election of certain persons as directors of the company, and thereby to cause themselves to be employed in the service of the company; and this end, pursued in a legitimate and open manner, and without deceiving or attempting to deceive and defraud those who had the power and right to employ them, or to aid them in their pur-poses, was as unobjectionable as any pursuit whatever. But if, by an insatiable appetite for gain, the respondents kept exclusively in view the object to be accomplished, lost sight of honesty and fairness in the means used to effect it, and resorted to fraud and falsehood, in such case they have made themselves amenable to the law.

Assuming, then, that the purpose of the respondents was law-ful, still, if the means used to effect it be unlawful, the offence will be complete. The illegality of the means in such case must be explained by proper statements, and established by proof. 2 *Russ. on Crimes* 569; *The King* vs. *Seward,* 1 *Ad. & E.* 706; *The King* vs. *Eccles,* 3 *Dougl.* 337; *Archb. Cr. Pl.* 390, 391. The act of marriage is in itself lawful, but a conspiracy to pro-cure it may amount to a crime, by the practice of undue means. *Fowler's Case,* 3 *East P. C.* 461; *Best's Case,* 2 *Lord Raym.* 1167; *Hawk., B.* 1, *ch.* 72, § 3, (*n.*)

The authorities agree that the gist of the offence is the conspiracy. *Best's Case,* 2 *Lord Raymond* 1167; *Vertue* vs. *Lord Clive,* 4 *Burr.* 2475; *Commonwealth* vs. *Davis,* 9 *Mass.* 415; *Common-wealth* vs. *Hunt,* 4 *Met.* 125; *Gill's Case,* 2 *B. & Ald.* 204.

When it is said in the books that the means must be unlawful, it is not to be understood that those means must amount to in-dictable offences, in order to make the offence of conspiracy com-plete. It will be enough if they are corrupt, dishonest, fraudu-lent, immoral, and in that sense illegal, and it is in the combina-tion to make use of such practices that the dangers of this offence consist. *State* vs. *Buchanan,* 5 *Har. & J.* 317. Conspiracies may be indictable where neither the object, if effected, nor the means made use of to accomplish it, would be punishable without

the conspiracy. In the case of a conspiracy among journeymen to raise their wages, the object of the conspiracy is lawful, and the means by which the object is to be effected are no otherwise unlawful than as the conspiracy makes them so. *Rex* vs. *Tailors of Cambridge*, 8 *Mod.* 11. So in the case of the conspiracy among the officers of the East India Company, to resign their commissions, the means were lawful, but for the conspiracy. *Vertue* vs. *Lord Olive*, 4 *Burr.* 2472. In the case of *The King* vs. *Seward*, 1 *Ad. & E.* 706, which was an indictment for conspiring to cause a male pauper to marry a female pauper, Mr. Justice *Taunton* says, that "merely persuading an unmarried man and woman in poor circumstances to contract matrimony, is not an offence. If, indeed, it were done by unfair and undue means, it might be unlawful, but that is not stated. There is no averment that the parties were unwilling, or that the marriage was brought about by any fraud, stratagem, or concealment, or by duress or threat." So, raising or lowering the price of the public funds is not in itself criminal, but a conspiracy to raise their price by *false rumors* is indictable. *The King* vs. *De Berenger*, 3 *M. & S.* 67. And admitting that the offence of conspiracy is one which should be punished, if a combination to do dishonest and immoral acts do not constitute a conspiracy, even although the acts be not indictable or even actionable, in numerous cases justice could not reach the offenders.

But it is not necessary, in the present case, for us to determine whether, if the object be lawful, the offence of conspiracy will be committed if the means used be no otherwise unlawful or immoral than as they are made so by the conspiracy.

The indictment alleges that the respondents conspired to induce persons, by issuing to them fraudulent policies of insurance, to appear at the annual meeting and vote for directors.

It appears from the fact that the respondents were found guilty, under the instructions of the court, stated in the case, that the fraud was this : the respondents agreed that the policies should be held and treated as mere nullities for every purpose except that of authorizing the holders to vote thereon at the annual meeting.

State *v.* Burnham.

It is argued that the allegation of the means used is not proved, because the respondents *issued* no policies; that they were issued by the directors, and the respondents merely delivered them. In one sense the respondents did not issue the policies. They did not issue them in the sense in which the word is ordinarily used, when a bank or an insurance company is said to issue its bills or its policies, for they were not a corporation. But the word *issue* means "to send forth, to emit, to send out, to deliver for use," and the respondents, having procured the policies, *issued* them by sending them out and delivering them to the insured. The allegation, therefore, is strictly proved. But the respondents issued the policies, also, by procuring the directors to issue them, who in this matter were their unconscious agents. We do not think, therefore, that this exception is valid.

The respondents, then, issued the policies. These were in form legal, but in substance dishonest, because the purpose for which, and the consideration upon which they were issued, were corrupt. Having a corrupt purpose in view, are they the less criminal because they prostituted the forms of law to enable them to subserve that purpose? Is the fraud on the company any less? The transaction, if known, certainly could have no other than an injurious effect upon the standing of the company with the public. The object of the company was to indemnify the public against the hazards of fire, and a large number of persons had a deep interest in its well being, and the injurious effect of such a combination was of such a kind that common prudence would not enable one to guard himself against it. If the respondents desired to secure the election of certain persons as directors, they might well enough have induced their friends to become members of the company; they might have canvassed for votes; they might have resorted to the ordinary practices of electioneering. They might have used all those arts which the good sense and right feeling of every disinterested man condemn, although the moral sense of the public may not be sufficiently pure to discountenance them. But all this might have been done without an actual fraud, or even with no fraudulent intent. But here there was a gross fraud. By whose votes were the directors to be elected? It was not by

*bonâ fide* members of the company. It was not by those whose membership was the result of a positive contract to continue for a definite period. It was not by those who intended to take upon themselves certain responsibilities, in consideration of certain benefits to be derived from the company. But the contracts, except for one selfish and specific purpose, were false. In their substance they were wrongful and fraudulent. They were honest only in their form and outward seeming. They were to exist only as blinds to those whose interests depended on their being honest, upon their being any thing but what they were in fact. The choice of directors in such an association is of the last importance. The control they exercise over the property of the company is great. The measures they adopt in conducting the affairs of the company are full of interest to the members. On them the institution depends for the confidence of the public, for the proper disposition of the funds from which losses are to be paid, and for the general integrity and skill with which its business is managed. They should, of course, be elected by those only who have a positive interest in the success of the company. But this combination intended that they should be chosen by persons to whom its interests were immaterial; who took their policies under a fraudulent pretence, and who were brought forward to outvote the unsuspicious members of the association, who were ignorant of this concerted action. Can we say that this was not a fraud on the directors; that it was not a fraud on the other members? Can we say that policies, legal in form, legally binding in fact upon the insured, but which, it was agreed, should not have the validity they imported, were not founded upon a corrupt agreement; were not, in the language of the indictment, *false* policies? We can regard such policies only as most immoral and fraudulent means to accomplish the object of the respondents, and with this view our opinion is that the instructions of the court were correct.

*Judgment on the verdict.*