CURRIER *v.* PERLEY.

The common law in relation to tenancies at will from year to year and from month to month, is in force in this State, except as it is modified by the Revised Statutes.

A tenant at will from year to year cannot, by his own act alone, put an end to his tenancy in any other way than by a notice to quit.

Such tenancy may be terminated by assent of the lessor and lessee, at any time, without such notice.

So such tenancy may be terminated by any wrongful act, either of the lessor or lessee, which would at common law determine an estate at will strictly, if the other party chooses to take advantage of it.

By the Revised Statutes three considerable changes are made in relation to these tenancies:

1. The burden of proof is changed. Every tenancy at will is presumed to be at will strictly, and not from year to year, as at common law, unless the contrary is shown.

2. The notice may expire on any day named in it, and is not limited to expire, as at common law, at the end of the year, month, &c.

3. Three months, thirty days, and seven days notice, are prescribed, instead of six months and the intervals between payments of rent at common law.

The provisions of the Revised Statutes relative to notices are not confined to cases under the summary process before a justice, but apply equally in actions for use and occupation, and in real actions.

Actual occupation is required to support the action for use and occupation; but if such occupancy is commenced by the assent of the owner, the tenant will be responsible for the rent until the tenancy is legally determined.

ASSUMPSIT, for the use and occupation of a house and other buildings, in Lebanon, from November 1, 1847, to April 1, 1848. Plea, tender of eight dollars. Replication, that the plaintiff sustained greater damages.

It appeared that the defendant, on the 1st of November, 1847, entered into the premises under the plaintiff, by virtue of a verbal agreement, to hold at a rent of eight dollars per month, and kept actual possession about one month. As to his occupation after the first month, the evidence was conflicting, having a tendency to show that some articles of his property remained on the premises, and that he retained control of the key until late into the next winter. There was no evidence of any written

notice from the defendant to the plaintiff of an intention to quit, nor any evidence that the plaintiff entered, or accepted any surrender, until April 1, 1848, when he resumed possession.

The court instructed the jury that the defendant having entered under the plaintiff by virtue of a verbal agreement, became tenant at will to him; that an abandonment of the premises by the defendant, without written notice to the plaintiff, would not terminate the tenancy; that without a written notice, and without a surrender and acceptance, the tenancy at will would continue until the plaintiff entered on the 1st of April, 1848.

The jury returned a verdict for the plaintiff, which the defendant moved to set aside for misdirection in the foregoing instructions.

*Kittredge*, for the defendant, contended that the instruction given by the court to the jury, that the tenancy at will could be terminated only by a written notice, was incorrect. The last section of the 209th chapter of the Revised Statutes limits the construction of the whole chapter. The evil to be provided for was, that landlords were unable to oust their tenants at will without a law suit, a long process. The remedy provided was a summary process. The first section provides that the landlord may notify the tenant to quit, and thus end the tenancy. The second prescribes the length of the notice, and the third makes a notice to quit equivalent to an actual entry, where a condition of a written lease has been violated. The seventh and following sections give to the lessor a summary process to recover possession, where such notice has been given without effect. If the landlord would resort to this mode of process, he is required to give a notice, but in no other case. Notice is not required to terminate the tenancy, and the landlord may resort to his entry without notice. The legislature intended to give a new remedy, but not to take away any former rights. Both the landlord and tenant were expected to retain all the rights and remedies they previously had. If the legislature had intended to take from the lessee any of the rights he had before, they would have used

terms clearly expressing that intention; but there are no words which imply such design. The sixth section, which provides that the tenant may give notice, seems designed for the benefit of the tenant, and not as a restriction, depriving him of the power to end his tenancy in any other way but by notice. If such a limitation of the tenant's power was intended, it would have been in express terms. We have here no tenancy at will from year to year, or from month to month. The tenant in this case was a tenant at will strictly, and liable to quit instantly, at the pleasure of his landlord, or at his own. At common law it was never necessary to give to such a tenant any notice. Notice is only required by statute, and then only for the purpose of the summary process. This is apparent from the last section of the chapter, which provides that nothing therein should be construed to prevent any landlord from pursuing his remedy at common law.

This action is for use and occupation, to be maintained by shewing occupation alone. Wood., Lect. 345; *Bellasis* v. *Burbrick*, 1 Salk. 209; *Eaton* v. *Jaques*, Doug. 457. Here was no occupation beyond the month, which we admit, and for which we have paid money into court. Could the defendant be deemed an occupant after he had quit the possession? If the ruling is right, the action may be supported without any occupation. Suppose he had given verbal notice of his leaving, could this action be maintained afterward? The statute could hardly have been intended to produce such a result. Here the action was sustained after the defendant had quit and given up the possession; and he was holden to pay till the plaintiff took possession. It could not be intended that a man who hires a house for a year and quits without notice, or with a notice, where the landlord refuses to accept the possession, should be holden to pay rent. Such, at any rate, is entirely contrary to the common understanding of the community.

*Quincy*, for the plaintiff. Actual occupancy is necessary to maintain the action for use and occupation; but it need not be

continued. The lessee has the legal occupation, if he does not terminate his lease in a legal mode, and such legal occupation is all that is required. If the tenant could terminate his lease at common law without notice, how is he benefitted by the sixth section? Here was a verbal contract only, making the tenant a lessee at will. If he could before leave at his pleasure, the sixth section conferred on him no right or benefit, but superadded a duty. Why was such a provision introduced at all, except it was to give to the tenant a power to terminate his lease in a case where he had before no power to do it?

*Kittredge,* in reply. The design of the sixth section was to give the lessee the right to terminate a written lease when the condition was broken. The tenant could not give a notice, in case of his holding over or neglecting to pay the rent, and could not in any case either need or have any benefit of the summary process, because he could quit when he pleased.

BELL, J. By the Revised Statutes, chap. 209, § 5, " Every tenancy or occupancy shall be deemed at will, and the rent payable on demand, unless a different contract is shown;" and by chap. 130, § 12, " Every estate or interest in lands, created or conveyed without an instrument in writing, signed by the grantor or his attorney, shall be deemed an estate at will only." By these provisions it is made clear that, by a verbal agreement, no right or interest in real estate can be conveyed, but an estate or tenancy at will; and the burden of proof is on the person who alleges the existence of a greater estate, to show it by a written instrument. Without such writing, however clear and distinct the agreement of the parties may be, for a term of years or other definite period, nothing can be deemed to pass to the lessee but an estate at will. *Goodtitle* v. *Herbert,* 4 D. & E. 680.

At common law, estates at will are of two classes : estates at will strictly, and estates from year to year. They differ chiefly, if not entirely, in this. The former may be terminated by either of the parties at his pleasure ; the latter can be terminated

against the will of the other party, only at the expiration of the year, month, &c., as the case may be, by a notice to quit, except where one of the parties has failed to perform his part of the contract. The last class of tenancies is so much more favorable to the tenant than the strict tenancy at will, that the courts have, from a very early period, leaned strongly in favor of regarding every tenancy, the terms of which do not show a strict tenancy at will, or which is not created by a written instrument, as a tenancy from year to year. 2 Black. Com. 147 ; 1 Cruise Dig. 260 ; 4 Kent. Com. 111 ; 2 Greenl. Ev., §§ 319 to 325, and cases there cited.

This distinction may be traced to the Year Books. Brooke, in his Abridgement, (published in 1573,) Lease 53, cites 13 H. VIII. 16, (1521,) for this position. *Home lesse pur un an, et sic de anno in annum ad voluntatem partium, vel quamdiu partibus placuerit, la quant un an est passe, et auter an commence, le lessor ne oustera le lessee tanque le second an soyt finie, et le lessee avera warning de avoider per demy an ante finem anni, et eadem de warning sur lease a volunt. ut videtur, contrar. sur lease pur term d'auter vy ou pur ans.*

Other ancient authorities to this point are cited by Putnam, J., 2 Pick. 73, note. It has been always held by this court that the body of the common law, so far as it is applicable to our institutions and the circumstances of the country, is adopted here and continued in force by the Constitution, so far as it is not repugnant to that instrument, until altered or repealed by the legislature. *State* v. *Rollins*, 8 N. H. Rep. 550 ; *Mayo* v. *Wilson*, 1 N. H. Rep. 58 ; *Houghton* v. *Page*, 2 N. H. Rep. 44 ; *State* v. *Burnham*, 15 N. H. Rep. 401. We are aware of nothing which tends to show that the rules of the common law, relative to estates from year to year, are in any way inapplicable to our institutions, or to the circumstances of the country. The general system of the common law relating to real estate was beyond question "adopted and approved and commonly practised upon" in the transactions of business, and "in the courts of law," from the foundation of the Province; and we can see

no reason to doubt that this portion of it, founded as it is upon much clearer principles of equity and justice than many other parts of it, was adopted with the rest.    See 7 D. & E. 85.

At common law the notice required to put an end to tenancies from year to year, was half a year.  *Parker* v. *Constable,* 3 Wils. 25; *Right* v. *Darby,* 1 D. & E. 159; *Oakapple* v. *Copous,* 4 D. & E. 361; *Gulliver* v. *Burr,* 1 W. Bl. 596.

In case of a tenancy for a shorter period, as from quarter to quarter, or month to month, the length of the notice is regulated by the letting, as a month's notice for a monthly letting.  *Doe* v. *Hazell,* 1 Esp. Ca. 94; *Roe* v. *Raffan,* 6 Esp. Cas.; 4 *Doe* v. *Scott,* 6 Bing. 362.

And the notice was required to terminate with the current year or month of the tenancy, unless otherwise specially agreed by the parties.  *Right* v. *Darby,* 1 D. & E. 159; *Doe* v. *Bell,* 5 D. & E. 471; *Roe* v. *Ward,* 1 H. Bl. 97; *Doe* v. *Dunovan,* 1 Taun. 555.

By the Revised Statutes, chap. 209, the common law, as to notices to quit, is changed in several respects.

I. Three months notice is made sufficient in all cases where the letting is for more than three months; thirty days in all cases where the letting is for less than three months; and if the rent due is not paid upon demand, seven days notice is made sufficient in all cases.    The 2d section is as follows:  " If any tenant or occupant neglects or refuses to pay the rent due and in arrear, upon demand, seven days notice shall be sufficient; if the rent is payable more frequently than once in three months, whether such rent is due or not due, thirty days notice shall be sufficient; and three months notice shall be sufficient in all cases."

II. It is not necessary that the notice should terminate with the last day of the current year or month.    Section 1 provides that " Any lessor or owner of any lands or tenements may *at any time* determine any lease at will, or tenancy at sufferance, by giving to the tenant or occupant a notice in writing to quit the same *at a day therein named.*"    And by section 6, " Any

Currier *v.* Perley.

lessee may terminate his lease by notice in writing, in the same manner as the lessor, and such notice shall have the same effect for all purposes as a notice by the lessor to the lessee." It would still be expedient that the notice should end with the current year or month, since the lessor could claim no rent for an unexpired year or month, where he had put an end to the lease by his own act; and the tenant, for the same reason, could not relieve himself of the rent for the whole year or month by electing to leave a few days before it expired. *Kighly* v. *Bulkly*, 1 Sid. 339; *Timberly* v. *How*, 2 Jo. 5; Vin. Abt., Estate, B, c, pl. 3; Com. Dig., Estates, H, 9; *Carpenter* v. *Collins*, Brownlow 89.

III. The tenancy will be presumed to be at will strictly, and the rent to be payable on demand, unless a different contract appears. See § 5, before quoted. It is not understood, however, that this provision affects in any way the rules of evidence at common law, as to the nature of the tenancy, except by changing the burden of proof, and making it incumbent on the tenant to show a tenancy from time to time. It will still be inferred, as at common law, that the tenancy is from year to year, from the fact that the original letting, from which the tenant has held over, was for a year or years. *Doe* v. *Watts*, 7 D. & E. 83; *Dunn* v. *Rawlings*, 10 East 261; *Doe* v. *Somerville*, 6 B. & C. 126; *Jackson* v. *Salmon*, 4 Wendell 327. And that a tenancy is from quarter to quarter, or from month to month, from the fact that the rent has been paid quarterly or monthly. *Prindle* v. *Anderson*, 19 Wend. 301; *S. C.*, 23 Wend. 616; and so of any other circumstance from which the term of the tenancy may be inferred.

By the general rule of the common law, in cases of tenancies at will, from year to year, or the like, neither party can put an end to the tenancy, against the will of the other party, without the notice to quit required by the law. And the rule in this respect is alike for both parties. The tenancy continues, whatever either party alone may do, until the notice to quit is given and the day specified in the notice has arrived. *Legg* v. *Strud-*

*wick*, 2 Salk. 414; *Timmins* v. *Rowlinson*, 3 Burr. 1609; *Leighton* v. *Theed*, 1 L. R. 707; *Roe* v. *Lees*, 2 Bla. Rep. 1172; *Doe* v. *Porter*, 3 D. & E. 16; *Paige* v. *Ellis*, 2 Pick. 71, *Putnam*, J., note; *Gleason* v. *Gleason*, 4 Law Rep. N. S. 389. By agreement of the parties the length of time required for the notice may be varied, and it may be limited to end on a particular day or time. *Doe* v. *Charnock*, Peak. Ca. 4; *Tyley* v. *Seed*, Skin. R. 649; *Doe* v. *Bell*, 5 D. & E. 471. And if it is agreed that the tenancy shall end on a particular day, there is no necessity for any notice. *Right* v. *Darby*, 1 D. & E. 159; *Cobb* v. *Stokes*, 8 East 358; *Doe* v. *Stratton*, 4 Bing. 406; *Clapp* v. *Paine*, 6 Shep. 264; *Dorrell* v. *Johnson*, 17 Pick. 263; *Allen* v. *Jaquish*, 21 Wend. 628. This would be otherwise in a process under our statute, because in that process notice is *always* required. Sec. 7.

By the action of *both* parties the tenancy may be terminated at any time without notice, as by an actual agreement, or a surrender by the tenant and an acceptance of possession by the lessor. *Harding* v. *Crethorn*, 1 Esp. Ca. 57; *Doe* v. *Stagg*, 5 Bing. N. C. 64; *Randall* v. *Rich*, 11 Mass. 494; *Hazeltine* v. *Seavens*, 4 Shep. 212; *Smith* v. *Niven*, 2 Barb. S. C. 180. Such agreement or acceptance may be inferred from any act of the tenant indicating an intention to leave the premises or give up the possession, accompanied by any act of the lessor, from which his assent to the act of the lessee may be inferred. *Woodcock* v. *Nuth*, 8 Bing. 170. The acts on both sides, from which a wish to end the tenancy, and an acquiescence in such wish may be fairly inferred, are infinitely various. Leaving the occupancy and giving up the key to the lessor, or otherwise giving him notice of leaving, are among the most natural and obvious on the part of the tenant, as an acceptance of the key, or an entry, or occupancy by a new tenant, are on the part of the lessor. *Sparrow* v. *Hawks*, 2 Esp. Ca. 504; *Whitehead* v. *Clifford*, 5 Taun. 518.

Besides the acts showing the assent of both parties to the discontinuance of the tenancy, an estate from year to year may

be ended by any act of the lessor or lessee which would at common law terminate a lease at will strictly, provided the other party chooses to take advantage of it. Such are all wrongful acts of the tenant in regard to the property, as an attornment to another person. *Throgmorton* v. *Whelpdale*, B. N. P. 96; *Jackson* v. *Vincent*, 4 Wend. 633; or any act disclaiming the tenancy: *Doe* v. *Frowd*, 4 Bing. 557; *Doe* y. *Grubb*, 10 B. & C. 816; *Jackson* v. *Wheeler*, 6 Johns. 272; *Willison* v. *Watkins*, 3 Pet. 49. Or the commission of waste or the like: *Phillips* v. *Covert*, 7 Johns. 1; *Daniel* v. *Pond*, 21 Pick. 367; and all acts of the lessor which are inconsistent with and subversive of the rights of the tenant. Co. Litt. 55, b; *Hinchman* v. *Iles*, Vent. 247; *Turner* v. *Doe*, 9 M. & W. 643; *Ellis* v. *Paige*, 1 Pick. 43.

In the present case the lease was verbal. The agreement was, that the tenant should hold at eight dollars a month, payable monthly. He was therefore a tenant at will from month to month. No time was limited by the agreement at which the tenancy should cease. He had a right to put an end to the tenancy by a month's notice to quit; but he gave no such notice. He would cease to be tenant by any act of his own, followed by any act of his lessor, from which it could be inferred that he gave up the possession and the lessor accepted it; but no such acts were shown. The conflicting evidence as to the possession went only to show that he ceased to occupy the premises, though some articles of his property were not removed, and he retained the key, the ordinary badge of possession; but there was no evidence tending to show that the plaintiff entered or accepted any surrender. If the defendant had satisfied the jury that he had entirely ceased to occupy the premises, and retained no control over them, yet, as no act is shown, either of assent or acquiescence on the part of the lessor, the mere act of leaving the property by the lessee did not end the contract, nor restore the property to the lessor.

No act is shown on the part of the lessor, of which the tenant had a right to take advantage to end the tenancy; neither is it

shown that the lessor had taken advantage of any wrongful act of the tenant to annul the contract. The contract of letting, then, remained in full force, and both parties were bound by it. The tenant had the lawful control of the building, and had a perfect right to use his own pleasure in relation to the occupation of it, and the lessor had no right to complain, whether it was fully or partially occupied. Under such circumstances there remained but one course for the tenant to discharge himself of his liability for the rent: namely, to give the notice to quit provided by the statute, and thus put an end to his contract and his tenancy. If he did not choose to do this, he has no right to complain; and if he did not know it to be necessary, his ignorance is probably to be attributed to the fact that he did not do what he ought to have done: that is, give immediate notice to his lessor that he had left, and offer him the key, which would have led to the acceptance or refusal of the possession; and in case of refusal, to an immediate inquiry what he must do to avoid further liability.

It is suggested in the able argument of the defendant's counsel, that the 209th chapter of the Revised Statutes was merely designed to provide a new remedy for the lessor to recover possession of the leased property, without affecting the rights or remedies which the parties were entitled to under the old law; and that the provisions in it as to notice should not be so construed as to affect the rights of either party, where he seeks redress under the old forms of action, as the plaintiff does in this case by the action for use and occupation.

If this view were to be held correct, it would make no difference in the case before us, since, at common law, the defendant would be bound to give the same notice, and to take the same steps to put an end to his tenancy as under the statutes, since they have made no change whatever in relation to cases like the present, unless it is to substitute a notice of thirty days for one of a month.

But the language of this chapter so far as it relates to notices is broad and general. It prescribes how all tenancies at will may be terminated, and directs the length of notice required;

and there is nothing which confines its operation to proceedings under the statute, or which shows an intention to prescribe a different time or manner of notice to quit in the statute process, from that required in the ordinary actions at law. We think the notices prescribed by the statute were designed to be substituted for those required at common law.

The instructions of the court below to the jury were in our opinion correct and proper, and there must be

*Judgment on the verdict.*