CHESHIRE, MAY TERM, 1817.

SOLOMON MAYO *versus* JAMES WILSON ET AL.

The 8th section of the statute of December 24, 1799, which authorizes selectmen and tythingmen to arrest persons suspected of travelling unnecessarily on the Lord's day, is not unconstitutional.

THIS was an action of trespass. The first count in the declaration alleged, that the defendants, at Francestown, on the 3d day of March, 1816, with force and arms made an assault upon the plaintiff, and laid hold of, stopped and detained him a long time against his will.

The second count alleged that the defendants, at Francestown, on 3d March, 1816, with force and arms seized and stopped a certain span of horses and a double sleigh, of which the plaintiff was then and there possessed, and kept and detained the same for the space of seven hours.

Simeon Dodge, one of the defendants, as to the force and arms, &c. pleaded "not guilty," and as to the assaulting detaining, &c. he pleaded in bar, that at and before the time when, &c. he, the said Dodge, was one of the tythingmen of said town of Francestown, duly elected and qualified, and that the plaintiff at the time when, &c. being on the Lord's day, between sunrise and sunset, was travelling in said Francestown, in the style and capacity of a teamster, with a carriage of burden, called a sleigh, and drawn by two horses, and was so travelling then and there to appearance not from

necessity, nor to attend public worship, nor to visit the sick, nor to do any office of charity ; and that the said Dodge did then and there suspect the plaintiff of thus travelling unnecessarily on said day, between sunrise and sunset, whereupon said Dodge, being a tythingman, as aforesaid, then and there notified the plaintiff thereof, and requested him to stop and inform the said Dodge of the cause and reason of his travelling as aforesaid, which the plaintiff then and there refused to do. Whereupon the said Dodge gently laid his hand on the plaintiff, and stopped, seized and detained him, and in so doing said horses and sleigh he was driving, necessarily detained for such time only as was necessary for demanding the cause and reason of the plaintiff's travelling as aforesaid, his name and place of abode, and for receiving the answer to such demands as were lawful, &c.

To this plea there was a general demurrer and joinder.

The demurrer was argued by Henry Hubbard, on the part of the plaintiff, and by James Wilson, on the part of the defendants.

The opinion of the court was delivered by

RICHARDSON, C. J. It is contended by the plaintiff in this case, that the 8th section of the statute of December 24, 1799, (*Laws* 347,) which authorizes selectmen and tythingmen, within their respective precincts, forcibly to stop and detain any person or persons they shall suspect of travelling unnecessarily on the Lord's day, is contrary to the constitution of this state, and void, and that no person can justify an arrest under it. If the act in question be contrary to the constitution, the consequences for which the plaintiff contends must undoubtedly follow.

By the 15th article of the bill of rights, prefixed to the constitution of this state, it is declared that "no subject shall "be arrested, imprisoned, despoiled, or deprived of his pro- "perty, immunities or privileges, put out of the protection "of the law, exiled, or deprived of his life, liberty or estate, "but by the judgment of his peers, or the law of the land." By the 19th article of the same bill of rights, it is declared "that every subject hath a right to be secure from all un-

"reasonable searches and seizures of his person, his houses,
"his papers and all his possessions. Therefore all war-
"rants to search suspected places, or arrest a person for ex-
"amination or trial in prosecutions, for criminal matters,
"are contrary to this right, if the cause or foundation of
"them be not previously supported by oath or affirmation."
Coke says, the words "*per legem terræ,*" in *magna charta,*
and the words "due process of law," in the statute of 37 *E.*
3, *c.* 8, mean the same thing. 2 *Institute* 50. And we have
no doubt that the phrase, *by the law of the land,* in our con-
stitution means the same thing as *by due process of law.*

The question then is, what are we to understand by *due
process of law?* The plaintiff contends that the writs of duly
constituted courts; and warrants, under the hand and seal of
magistrates, are the only due process of law by which an
arrest can be made within the meaning of the constitution.
If this be the true construction of the constitution, the law
in question is most clearly invalid, for it certainly purports
to authorize an arrest, without writ and without warrant
from a magistrate.

On the part of the defendants it is contended, that the
meaning of the constitution is not to be thus restricted, but
that an arrest without writ and without warrant, if author-
ized by the common or statute law of the land, is an arrest
by due process of law, and an arrest by the law of the land,
within the meaning of the constitution, as much as an ar-
rest made by virtue of a warrant from a magistrate.

There is a sound and safe rule for the construction of stat-
utes, which it is believed will enable us to determine with
great certainty the true meaning of these clauses in the con-
stitution; and that is, if a statute make use of a word, the
meaning of which is well known at common law, the word
shall be understood in the statute in the same sense it was
understood at common law. 6 *Mod.* 143, *Smith* vs. *Her-
man.*(1) The clause in our constitution now under consider- (1) Bac. Ab.,
ation, happens to be a literal translation from *magna charta,* Stat. 1, § 4.
c. 29.—2 *Co. Inst.* 45. "*Nullus liber homo capiatur vel*

*imprisonetur nisi per legem terræ.*" The phrase, "*per legem terræ*," in *magna charta*, has a meaning as fixed and as well determined as any phrase known in the common law. The makers of the constitution having adopted a phrase from *magna charta*, the meaning of which in that instrument was so well known, must be intended to have used it in the same sense in which it has always been understood to have been used there. *Sullivan*, in his Lectures, 402, has a commentary upon this part of *magna charta*. He says, that a process of law for the purpose of an arrest is two fold, either by the king's writ or by what is called a warrant in law. He then says, that a warrant in law is two fold, viz. 1, a warrant in deed by authority of a legal magistrate; or, 2, that which each private person is invested with and may exercise. He then enumerates the cases where the law warrants a private person to arrest and imprison another. 1. If a man is present when another commits treason, felony, or notorious breach of the peace, he has a right instantly to arrest and commit him, lest he should escape. 2. If an affray be made to the breach of the peace, any person may, during the continuance of the affray by warrant in law restrain any of the offenders; but if the affray be over, there must be an express warrant. 3. If one man dangerously wound another, any person may arrest him, that he be safely kept till it be known whether the person shall die or not. 4. Suspicion also, when it is violent and strong, is in many cases a good cause of imprisonment, but he who arrests upon suspicion must take care that his cause of suspicion be such as will bear the test, for otherwise he may be punishable for false imprisonment. 5. A watchman may arrest a night walker at unseasonable hours, by the common law. But with respect to persons arrested by private authority, there must be an information on oath before a magistrate, and a commitment thereon in a reasonable time, which is esteemed twenty-four hours, otherwise the person is to be no longer detained. Coke, in his commentary upon *magna charta*, gives the same explanation. 2 *Inst.* 52.

Mayo
*vs.*
Wilson & al.

See also 2 *Hawkins' P. C.* 115.—*Comyn. Dig.*, *Imprison-ment, H,* 4.—2 *Roll.* 559. It seems clear that an arrest, if authorized by the statute or common law, though without writ or warrant in deed, has always been considered in Eng-land as warranted *per legem terræ*, by due process of law, within the meaning of *magna charta ;* and we have no doubt that any arrest here authorized by our common or statute law, must be considered an arrest by the law of the land, by due process, within the meaning of our constitution. We think that the 15th article in our bill of rights was not in-tended to abridge the power of the legislature, but to assert the right of every citizen to be secure from all arrests not warranted by law.

But further to elucidate this, it may be necessary to take a broader view of the constitution.

The second article of the bill of rights declares that all men have certain natural, essential, inherent rights, among which are the enjoying and defending life and liberty, and acquiring, possessing and defending property ; but the third article declares, that when men enter into a state of society they surrender up some of their natural rights to that society. All society is founded upon the principle that each individ-ual shall submit to the will of the whole. When we be-come members of society, then, we surrender our natural right, to be governed by our own wills in every case where our own wills would not lead us counter to the general will. We agree to conform our actions to the rules prescribed by the whole, and we agree to pay the forfeiture which the gen-eral will may impose upon the violation of those rules, whether it be the loss of property, of liberty, or of life. Upon this agreement rests all legitimate government, and the general will duly expressed is alone law. The people of this state have formed a constitution, in which they have agreed upon the manner in which the public will shall be expressed, and upon the extent to which individuals shall surrender their natural rights : and the people being the fountain of all power,

Mayo
*vs.*
Wilson & al.

and the constitution their will duly expressed, it is clear that the constitution is a part of the law of the land, paramount to all other laws.

By the constitution, the power to declare the general will is confided to a general court. "Full power and authority are hereby given and granted to said general court from time to time to make, ordain and establish all manner of wholesome and reasonable laws, statutes, ordinances, directions and instructions, either with penalties or without, so as the same be not repugnant or contrary to this constitution." The people of this state seem to have been extremely anxious that their natural rights should be surrendered only to the will of the whole, or in other words, to the law. It is therefore declared in the 12th article of the bill of rights, that the inhabitants of this state are not controlable by any other laws than those to which they or their representative body have given their consent. The constitution is a part of the law of the land, made by the people themselves; and the constitution having declared that all laws which had been adopted and approved, and usually practised on in the courts of law, should remain and be in force until altered by the legislature, the common and statute law in force before the adoption of the constitution may be considered as adopted and made by the people themselves. It is clear, then, that the people of this state are controlable only by the constitution, by the common and statute law adopted by the constitution and not altered, and by laws made by the general court in pursuance of the constitution. The last clause in the 15th article of the bill of rights only asserts the same thing. No subject shall be arrested, &c. but by the judgment of his peers or the law of the land. This clause may be thus analized. 1. No subject shall be arrested but by the law of the land: that is, by due process of law, warranted by the constitution, by the common law adopted by the constitution and not altered, or by statutes made in pursuance of the constitution. Thus if the house of representatives were to commit or arrest a person for a contempt in their presence, it

would be by process of law, expressly warranted by the constitution. If this court were to arrest a person for a contempt in its presence, it would be by process of law warranted by the common law adopted by the constitution. When an individual is arrested for travelling on Sunday, it is by process warranted by a statute made in pursuance of the constitution.

2. No subject shall be deprived of his immunities or privileges: that is, of the rights that belong to him as a free citizen, but by the judgment of his peers, the verdict of his equals, or by the law of the land, by the due course and process of law.

An individual convicted by the senate, upon impeachment, of bribery and corruption, may be disqualified to hold any office, and be thus deprived of a portion of his privileges as a free citizen, by " the law of the land."

An individual convicted by the verdict of a jury of an infamous offence is disqualified to be a witness or a juror, and is thus deprived of a portion of his privileges " by the judgment of his peers."

3. No man shall be put out of the protection of the law, outlawed, deprived of the benefit of the law, but according to the law of the land.

4. No subject shall be exiled, banished out of his country, but according to the law of the land.

5. No subject shall be deprived of his life, liberty, or estate, but by the verdict of his equals or the law of the land. Now an individual convicted by the verdict of a jury of a capital offence may be deprived of his life " by the judgment of his peers ;" if sentenced by a court martial to suffer death, he may be thus deprived of his life " by the law of the land."

The whole amount of this is, that the citizens of this state are subject only to the law.

In giving a construction to the 19th article of the bill of rights, it must be recollected that by the common law which the constitution adopts, in certain cases of open and manifest guilt, and in some cases of strong suspicion, an arrest might

Mayo<br>vs.<br>Wilson & al.

be made without a warrant ; but in all other cases a warrant founded upon a complaint under oath was required. In the cases where an arrest was permitted without a warrant, such an arrest was no more unreasonable and no more dangerous to personal liberty, than an arrest by a warrant, because it was not permitted but in cases where there was strong evidence of guilt.

The 19th article of the bill of rights does not seem intended to restrain the legislature from authorizing arrests without warrant, but to guard against the abuse of warrants issued by magistrates. It therefore declares that the foundation of warrants shall be supported by oath, and that they shall not issue but in the cases and with the formalities by law prescribed.

On the whole, we are clearly of opinion that the act in question is not unconstitutional and that the plea is good.