### EAST KINGSTON v. DARIUS TOWLE.

The act of July 3, 1863, entitled "an act in relation to damages occasioned by dogs," so far as it undertakes to charge the owner with the amount of damage done by his dog as fixed by the selectmen of the town without an opportunity to be heard, is unconstitutional, because it it contrary to natural justice and not within the scope of legislative authority conferred by the constitution on the general court; and also because it is in violation of the provision in the bill of rights, which secures the right of trial by jury in all controversies concerning property, except in cases where it had heretofore been otherwise used and practiced.

An act may be in part beyond legislative authority and within it for the residue; and if it is capable of being administered in the parts which are within the power of the legislature to enact, it will so far be a valid law.

The legislature have power to make towns liable for damage done within their limits by dogs, and to give towns a right of action to recover the actual damage from the owners of the dogs.

A town may maintain an action against the owner of a dog under the act of July 3, 1863, and recover the amount of the actual damage done as found by the jury on trial, not exceeding the amount of the order drawn for the damages by the selectmen.

On the question whether the defendant's dog did the damage, the character of the dog is not competent evidence, nor the fact that he had killed other sheep.

ASSUMPSIT on the statute of July 3, 1863, against the owner of a dog alleged to have been concerned in killing three sheep of John Towle.

The defendant demurred on the ground that the statute was unconstitutional. The court overruled the demurrer.

The defendant owned a dog and the sheep were killed; the only ques-

tion of fact was, whether they were killed by the defendant's dog. The plaintiff offered to show that the general character of the defendant's dog for killing sheep was bad, and that he had been seen to kill a sheep in John Towle's pasture the fall before, and that the defendant paid John Towle for the sheep so killed, and that the same dog had before killed other sheep in other places. The defendant offered to show that John Towle refused to accept the amount determined by the selectmen, and the town finally paid him a larger sum. The court reserved the questions arising on the foregoing case.

*Wood*, for the defendant.

*Stickney*, for the plaintiff.

PERLEY, C. J. This action is brought by the town on the statute of 1863, which provides that "every person suffering loss or damage by reason of the maiming, worrying, or killing of his sheep, lambs, or other domestic animals by dogs, may, within thirty days after he knows of such loss or damage, present to the selectmen of the town, wherein such loss or damage happened, proof of the nature and extent thereof; and thereupon said officers shall draw an order in favor of the person suffering such loss or damage, upon the treasurer of said town, for the amount of the same." The statute requires that the orders so drawn shall be registered by the treasurer and paid at the end of the political year in full, or *pro rata*, out of the proceeds of the tax on dogs.

By the statute, after such order has been drawn the town may recover in an action of assumpsit against the keeper or owner of any dog concerned in doing the damage or occasioning the loss, the full amount of such order. The act does not make any provision for a written statement of the claim presented to the selectmen, nor for any description of the animals killed or injured, or of the nature of the injury. Nothing like process, record, or written account of what is claimed or decided is required, except the order, and the registry of it by the treasurer. The owner or keeper of any dog concerned in the damage done is made liable for the amount of the order, without any opportunity to be heard on the question of the amount, and from this adjudication of the selectmen he has no appeal. The *ex parte* determination of the selectmen without process, notice, or record, on such proof as they may choose to receive, is by the act made conclusive on the owner or keeper of the dog as to the amount of the damage done, and consequently as to the extent of his liability.

The party suffering the damage has his election to take the order, or sue the owner or keeper of the dog for the penalty given by the first section of the act; but, having sued or taken the order, he is bound by his election and cannot have the other remedy. The amount of the order drawn by the selectmen is limited to their estimate of the actual damage done to the animals; and the amount thus fixed by the selectmen is the compensation to the owner of the animals if he takes the order, and he has no other remedy; and this by the statute is substituted

for the ordinary remedy by action in the name of the party who has suffered the injury. The owner of the dog is therefore directly interested as the real party in the inquiry before the selectmen, and in the terms of the act is bound by their determination. The amount of the order and the extent of the dog-owner's liability is not limited by anything, except the finding of the selectmen as to the amount of the damage, which may be trifling or large; for the injury may be to any class or any number of domestic animals, and the owner or keeper of any dog is made liable for all the damage that may be done by the largest pack, if his dog made use of them. The amount of the order in this case is not stated and is not material to the legal questions raised. It is not shown or alleged that in this case the defendant actually appeared before the selectmen and was heard on the question of damages, or that he had opportunity to appear or had any notice of the application.

Is this act, so far as it undertakes to make the owner of a dog absolutely liable for the amount of damage paid by the selectmen without opportunity to be heard on the question, within the general scope of legislative authority delegated by the constitution to the general court?

The general court is the legislative department of the state government and has under the constitution an ample grant of legislative power; the extent of the power is, however, limited, not only by the express prohibitions of the constitution, but by the nature itself of the power granted; and to be valid and binding the act of the legislature must be within the general scope of legislative authority. The power delegated by the constitution "to make and ordain all manner of reasonable and wholesome orders, laws," &c., confers no authority to make an order or law in plain violation of the fundamental principles of natural justice, though the act may not be prohibited by any express limitation in the constitution. For instance, I find nothing in the constitution which in terms prohibits the legislature from making a law to take private property for a public use without making provision for compensation to the owner; yet because it is contrary to natural justice that property belonging to an individual should be taken from him by the public, or for the public, without paying him the value, to do this is beyond the scope of legislative authority; and an act that should undertake to do this, would be unconstitutional and void. *Piscataqua Bridge* v. *Portsmouth Bridge*, 7 N. H. 35; Mason's Argument in the case of Dartmouth College, Farrar's Report, p. 35, & seq.

In the opinion of the judges, 4 N. H. 566, this constitutional limitation of the legislative authority is stated and explained as follows: "The power granted is a power to make all manner of laws and statutes which are wholesome and reasonable, and not repugnant to the constitution. It is in its nature a limited, restricted power. It is an old maxim of the common law that when an act of parliament is against common right and reason, the common law will control it and adjudge it void; and one object of this provision in our constitution was to adopt and confirm that maxim of the common law. An act of the legislature in order to have the force of a statute must, therefore, be neither repugnant to reason nor to the constitution." In the application of this prin-

ciple the judges, in that opinion, held that the legislature had no constitutional right to grant a tax upon lands in a particular unincorporated place for the purpose of making and repairing roads in such place, because, after paying taxes under the general law, it would be unreasonable and contrary to natural justice that the lands in a particular place should be burdened with another additional tax.

In England even, the legislative authority of parliament is practically, if not in theory, subject to this limitation that no law shall be passed which is contrary to common right and natural justice. Lord Coke, in *Dr. Bonham's Case*, 8 Co. 1186, says: "It appears in our books that in many cases the common law will control acts of parliament and adjudge them to be utterly void; for, when an act of parliament is against common right and reason, or repugnant, or impossible to be performed, the common law will control it and adjudge such act to be void." In his life of Coke, Lord Campbell, with characteristic flippancy, calls this "a foolish opinion;" but the same doctrine is laid down in *Day* v. *Savadge*, Hobart 85, 87, where Hobart says: "Even an act of parliament made against natural equity, as to make a man judge in his own case, is void in itself, for *jura naturæ sunt immutabilia*, and they are *leges legum.*" Whatever the theory may be in England, I take it to be quite clear, that, under the grant of authority to make and ordain all reasonable and wholesome orders and laws, the constitution of this State confers no power upon the general court to enact a law in conflict with natural equity and those elementary principles of justice which are everywhere recognized as fundamental in law and legislation.

The Bill of Rights in article 15, declares that "no subject shall be arrested, imprisoned, despoiled, or deprived of his property, immunities or privileges, or put out of the protection of the law, exiled, or deprived of his life, liberty, or estate, but by the judgment of his peers or *the law of the land.*" Similar provisions, borrowed in substance from *Magna Charta,* are found in the constitutions of other States, and have there been held to impose a limitation on the legislative power as well as on the other departments of the government. Thus, in *Jones* v. *Robbins,* 8 Gray 342, *Shaw, C. J.,* speaking of the corresponding provision in the constitution of Massachusetts, says: "No man shall be arrested, imprisoned, exiled, or deprived of his life, liberty, or estate, but by the judgment of his peers or the law of the land. These terms, we think, in this connection cannot be used in their most bold and literal sense to mean the law of the land at the time of the trial; because the laws may be shaped and altered by the legislature from time to time; and such a provision, intended to prohibit the making of any law infringing the ancient rights of the subject, would, under such a construction, be wholly nugatory and void." The same view was taken of a like provision in the constitution of New York, in *Taylor* v. *Porter,* 4 Hill 140, 145. In *Greene* v. *Briggs,* 1 Curtis C. C. Rep. 311, it was held that such a provision in the constitution of Rhode Island meant by "the law of the land" due process of law, in which is included the right to contest the change. *Curtis, J.,* says: "Certainly this does not mean any act which the assembly may choose to pass. If it did, the legisla-

ture could inflict the forfeiture of life, liberty or property without a trial." So in *Parsons* v. *Russell*, 11 Mich. 113, it was held that "the law of the land" within the meaning of the term as used in the constitution of Michigan, "is a law, which hears before it condemns, which proceeds upon inquiry, and renders judgment after trial." "If deprived of liberty or property, it shall be by impartial, judicial authority, after a trial and judgment." *Per Martin, C. J.*

In this State it would seem to have been understood that the provision of the Bill of Rights which prohibits all acts affecting life, liberty or property, except "by the law of the land," was not intended to limit the legislative power, but only to require that the proceedings should be according to the law for the time being. *Mayo* v. *Wilton*, 1 N. H. 57 ; *Dart. College* v. *Woodman*, 1 N. H. 130. But the same limitation on the legislature has been by our courts placed on the ground that the general grant of authority to make reasonable and wholesome laws confers no power to enact a law in violation of the fundamental maxims of justice and equity ; and the interpretation given to the term "law of the land" in the constitutions of other States, when applied as a limitation upon legislative authority, amounts in substance to the same thing ; for as interpreted there, the term "law of the land" is understood to embody in legal meaning the fundamental rules and maxims of justice which prevailed in the law of the time when the constitutions were adopted. Either way, whether these elementary principles of justice and equity are supposed to be embraced in the term "law of the land," or implied in the general nature of legislative authority, they equally limit the legislative power.

It is a maxim of general jurisprudence, not confined to any code, but, so far as I am informed, recognized as fundamental in the law of every enlightened people, that no man's private rights shall be concluded by any judgment, decree, or other adjudication, to which he was not so far a party that he had opportunity to be heard, and to adduce evidence on all points that affected his interests. Broom's Maxims 735 ; 1 Greenl. Ev. sec. 522. Proceedings *in rem* are no exception to this elementary rule ; for in such proceedings every party interested has the right to appear and be heard ; and every owner of property is supposed to keep such oversight of it as to be duly informed of the proceedings by the notices which are required to be given. Any act passed in violation of this principle of natural justice would not be a "reasonable and wholesome law" under our constitution, nor within the general scope of legislative authority.

This general principle, it is obvious, will apply in full force to proceedings instituted to determine the amount that shall be paid for an injury to property, or for the value of property taken from the owner. An inquiry of damages involves the interest of the party adjudged to pay them as much and as directly as an issue on the question whether he is liable to pay any damages at all. The law is so on authority as well as in the reason of the thing. The king by his royal prerogative might establish a new highway, or discontinue an old one ; and in either case his writ *ad quod damnum* issued to inquire of and determine the dam-

age to individuals from laying out, or discontinuing the way. This was an *ex parte* proceeding; and, therefore, though done under the king's writ, the return of the writ fixing the amount of damage was not binding on the parties interested, but was traversable; or the party might be heard on the question of damages before the chancellor, to whom the writ was returned. 2 Viner's Ab. 126; Title, *Ad Quod Damnum*, 2 Burn's J. 352.

In this State we have several cases, in which the necessity, under the constitution, of notice and opportunity to be heard on a question of damages in order to make the assessment binding, has been recognized. By the Revised Statutes, ch. 59, sec. 5, "if any person shall place in any highway or street, any timber, lumber, stones, or anything whatsoever to the incumbrance or obstruction thereof, he shall be liable to the town for all damages, which said town shall be compelled to pay to any person who has sustained damage by reason of such incumbrance or obstruction." The statute makes no mention of notice to the party who is to be charged with the damages which the town has been compelled to pay. If the town made a full, strenuous and skilful defence to the action of the individual who sued for damage caused by the incumbrance, the town would be compelled to pay the damages awarded against them in that suit. Still, though the town were compelled to pay the damages, as expressed by the statute, the judgment against the town would not be evidence against a defendant who was sued by the town under the statute to recover the amount, they had been compelled to pay, of the party who placed the incumbrance in the highway, unless he had notice of the suit against the town and opportunity to come in and defend. *Littleton* v. *Richardson*, 34 N. H. 179. In *Webster* v. *Alton*, 29 N. H. 369, one question was whether a town, sought to be charged with part of the expense of a highway laid out in an adjoining town should have notice of the hearing on the original application for laying out the road. It was held that notice of the hearing on the matter of damages was sufficient; but the whole case goes on the concession that the town could not be charged with damages without notice of the hearing, and an opportunity to be heard on that question. The disposition of that case depended "upon the construction and constitutionality of the first section of the act of July 8, 1850," and it would seem to have been admitted on all hands that the act would not have been valid if it had not provided for proper notice of the hearing on the question of damages. If the defendant in the present case had received notice of the application to the selectmen and had an opportunity to be heard before them, he might be bound by their determination, as was held in *Littleton* v. *Richardson;* but nothing of that kind appears in this case.

In this case the owner of the animals injured took the order on the treasurer as his remedy for the loss he had sustained. The amount was paid by an estimate of the actual damage done, and was received as the compensation for it. The recovery by the town instead of the party, who suffered the injury, does not change the nature of the payment, when made by the defendant. His interest in the question of damages is the same whether he pays the amount to the owner of the animals or

to the town ; and if the payment is called a forfeiture or penalty, or the statute a police regulation, still the interest of the defendant in the amount is the same, and his right to be heard on the question cannot be evaded by the name given to the payment or to the law.

We are of opinion that, so far as the statute undertakes to bind the defendant by the decision of the selectmen, fixing the amount of the damage, without giving him an opportunity to be heard on the question, it is not a valid law, because it is in violation of an elementary principle of law and justice, to wit, that a party is not to be bound by a judgment or other determination, to which he was a stranger ; that it is not a wholesome and reasonable law within the meaning of the constitution, which grants and defines the legislative authority, nor within the general scope of legislative power, because it is contrary to reason and natural justice.

Has the owner of the dog the right under the constitution that the question of damages should be tried by a jury ?

"In all controversies concerning property and in all suits between two or more persons, except in cases where it has been otherwise heretofore used and practiced, the parties have a right to trial by jury." Bill of Rights, article 20.

Provisions in the constitutions of some of the States, intended to secure the right of trial by jury, expressed in terms corresponding more or less nearly with this in our bill of rights, have been held to apply only to cases where an issue is joined and some right tried, and not to a mere inquiry of damages, in which the title to the property damaged or taken is not involved. In this State I understand that an inquiry of damages has been regarded as falling within the provision which guarantees the right of trial in all controversies relating to property, unless a different usage prevailed before the constitution was adopted, in the class of cases to which the particular case under consideration belonged. *Backus v. Lebanon*, 11 N. H. 19 ; *Dalton v. North Hampton*, 19 N. H. 361 ; *Petition of Mt. Washington Road Co.*, 35 N. H. 134. Even if this provision in our bill of rights should be narrowed in construction as similar provisions have been in some other jurisdictions, it would not relieve this case from the constitutional objection ; for the cases to which that construction has been applied, are where the sole question is as to the amount of compensation which the owner of property shall receive for it, or for some right in it, and not where an issue is tried on the fact whether the property has been injured or wrongfully taken, and the question of damages is an incident to the finding of the issue for the plaintiff; for, what is really, and in substance, proposed to be done by this statute ?

The owner of the animals is the real party injured ; the owner of the dog is the party liable for the injury. The amount to be recovered in the suit by the town is the actual damage as determined by the selectmen, and that amount is the compensation to the owner of the animals for his damages. It is his remedy for the injury he has suffered, and having taken the order he has no other remedy. The statute assigns the right of action to the town, and the owner of the dog answers to

the town instead of answering directly to the owner of the animals in an action brought in his own name. The result, so far as the owner of the dog is concerned, is the same as if the suit were brought directly by the owner of the animals to recover damages for the injury he has sustained. The question whether the defendant's dog was concerned in doing the damage is tried by the jury; but, if they find for the plaintiff, instead of the jury's assessing the damages as incident to the verdict, and as part of the verdict, the defendant is by this act made conclusively liable for the amount as determined by the selectmen. One tribunal tries the question of the defendant's liability for the damage, and another tribunal fixes in advance the amount of the damage, in case the issue as to his liability is found against him. In a trial by jury for an injury to person or property, the assessment of the plaintiff's damages is as much a part of the verdict for him as the finding of the issue; and a trial which should refer the assessment of the damages for the plaintiff to another tribunal, would not be a trial by jury according to the course of the common law, nor the trial secured to every subject by the bill of rights.

The damage for killing, maiming and worrying sheep and other domestic animals, is uncertain and unliquidated as much as in an action for an assault and battery. If the question of liability for the damage could be tried by the jury, and the inquiry as to the amount of the damage withdrawn from the jury, for aught that I can see, the same thing might be done by the same machinery, in a case of assault and battery. Suppose this act had provided that when any person should be assaulted and beaten within the limits of any town, he might present his claim for the damages to the selectmen, and, on their drawing an order for the amount fixed by them, the town might recover the same amount of the party who was guilty of the assault and battery, in an action of assumpsit, the right of the defendant in that case to have the jury assess the damages as part of the trial would stand under the constitution exactly as it does under the statute of 1863. And by a like contrivance in all cases of injury to property, as in trespass to land, trespass for taking and carrying away goods, an essential and often the most important part of the trial by jury might be assigned to another tribunal.

The trial by jury, secured to the subject by the constitution, is a trial according to the course of the common law, and the same in substance as that which was in use when the constitution was framed. *Opinion of the Judges*, 41 N. H. 551. In all actions for injury to property, the trial by jury included the assessment of the plaintiff's damages, when the verdict was for him. This we regard as an essential part of the trial by jury intended to be secured by the constitution. By this act the defendant is deprived of the right to such a trial, and so far as the act undertakes to make the defendant liable for the amount of damage fixed by the selectmen, we think it is in violation of the constitution, which secures the right of trial by jury "in all controversies concerning property."

It is said that the amount, which by the statute the owner of the dogs pays in the action by the town, is in the nature of a penalty or forfeiture. There are cases where a penal action may be maintained to re-

cover the amount, or double the amount, which an individual has suffered by a violation of his private rights; but in such cases the party subject to the penalty is as much interested in the assessment of the damages, and has the same right to a hearing on the question of damages, and to the same mode of trial, as where he is sued in a civil action sounding in damages; and the amount of the damages is determined by the jury who try the general question of the defendant's liability for the penalty. Com. Dig. Pleader 2, sec. 14; *Wybord* v. *Tuck*, 1 Bos. & Pull. 458; 3 Burns' Ec. Law, 534; 7 Wentworth's Pl. 243. See, also, *Greene* v. *Briggs*, 1 Curtis C. C. Rep. 311. It would not relieve the act from constitutional objection if the suit by the town were held to be in the nature of a penal action.

So far as the act undertakes to charge the defendant with the amount of damage determined by the selectmen, we are of opinion that it is not a valid law, because it gives the owner of the dog no opportunity to be heard before the selectmen on that question, and therefore is not a wholesome and reasonable law within the general scope of legislative authority conferred by the constitution on the general court; and also because the act is so far in violation of the provision in the bill of rights, which secures the right of trial by jury in all controversies concerning property.

An act may be in part beyond legislative authority, and within it for the residue; and if the act is capable of being administered in the parts which are within the power of the legislature to enact, it will so far be valid. *Fisher* v. *McGirr*, 1 Gray 1; *State* v. *Wheeler*, 25 Conn. 290; *Santo* v. *The State*, 2 Clarke, (Iowa,) 165. It would be in the power of the legislature to make towns liable for damage done by dogs, and to give the towns a right of action to recover the actual damage from the owners of the dogs, as is done in the case of obstructions placed on highways; and we think an action may be maintained on this statute by the town to recover from the owner of the dog the actual damage, which the jury who try the cause find the owner of the animals to have suffered, not exceeding the amount of the order drawn by the selectmen. If the declaration in this case relies on the order to establish the amount of damage, it may need amendment by inserting an averment that the actual damage was equal to the amount of the order drawn.

By the statute the owner of the dog is made liable for the damage done, whether the dog was accustomed to kill and worry sheep or not. We are not acquainted with any rule of evidence which will allow the character of the dog, or the fact that he had killed or worried sheep before to be admitted as evidence that he did the damage complained of in this suit. To show that he did this mischief it is not competent to prove that he had done similar mischief before, more than it would be to prove that a defendant sued for an assault and battery had beaten other men before, or the same man.

On the last point, DOE, J., dissented.