Rockingham,  }
April 7, 1914. }

SOLON A. CARTER, *State Treas.*, *v.* DANIEL A. CRAIG, *Adm'r*, & a.

Where the owner of a farm agrees to convey the same by will in consideration of
    support furnished to him and his wife during their lives, the property so passing
    is subject to taxation under section 1, chapter 68, Laws 1907, unless the devisee
    is one of the excepted class.
The imposition of a tax upon property passing by any conveyance intended to
    take effect in possession or enjoyment after the decease of the grantor, not
    for the purpose of raising revenue, but to prevent the fraudulent use of such
    transfers, is not unconstitutional on the ground that it unreasonably limits
    the right of freedom of contract.
Under the provision of the constitution which authorizes the enactment of such
    laws as will promote the public welfare, the legislature is empowered to impose
    reasonable restrictions on the freedom of action secured to individuals by the
    bill of rights; and when the legislative purpose is clearly constitutional, the court
    cannot declare an act invalid unless the restrictions thereby imposed are such
    that a fair-minded man must pronounce them unreasonable.

PROBATE APPEAL. Transferred without a ruling from the April
term, 1912, of the superior court by *Pike*, J., upon an agreed state-
ment of facts.

December 21, 1906, John P. French, a resident of Candia, entered
into a written agreement with Arthur W. Stone, then a resident
of Vermont, by the terms of which Stone agreed to care for French
and his wife during their lives and the life of the survivor, during
which time Stone and his family were to occupy a part of the dwell-
ing-house on French's farm; and for a further consideration, French
agreed to convey the farm, stock, and tools to Stone by will. Pur-
suant to this contract, French executed a will on January 8,
1907, which contained the following clause: "I do give, bequeath,
and devise the homestead farm on which I now live and also the
meadow (meaning to include all of my real estate except the wood-
lot partly in Candia and partly in Chester), with all of my stock and
farming tools, to Arthur W. Stone, on condition that he lives with
and cares for me and my wife during our natural lives."

Shortly afterward Stone took up his residence at the French
farm and fully performed his part of the contract, caring for French
until his death on January 26, 1910, and for Mrs. French until her
death on January 3, 1911. Stone accepted the devise of the home-
stead farm and the bequest of personal property, and took title
thereto under the foregoing clause of the will, in completion of
his contract. He was not related to French.

The probate court decreed that the property passing to Stone under French's will was not subject to a legacy tax, and the state treasurer appealed.

*James P. Tuttle*, attorney-general, and *Joseph S. Matthews*, for the plaintiff.

*Moodybell S. Bennett*, for the defendants.

*Per Curiam.* . The statute makes the passing of property by will subject to a tax when the beneficiary, as in this case, does not come within its exemptions. Laws 1907, c. 68, s. 1. It provides that "all property within the jurisdiction of the state, real or personal, or any interest therein, . . . which shall pass by will . . . to any person, absolutely or in trust, [except to the exempted class] shall be subject to a tax of five per cent of its value for the use of the state." It appears in the case that French made a will bequeathing and devising to Stone property as to the devolution of which the tax is sought to be imposed, that he did this pursuant to an agreement, that the will was proved and allowed, and that Stone accepted the provisions of the will and took title to the property thereunder.

The contract was to bequeath and devise the property to Stone. It was not a contract to convey, but to make a will in his favor; and French having made the will, and Stone having accepted its provisions and taken title to the property thereunder, the transmission was by will and is subject to the tax. *Matter of Kidd*, 188 N. Y. 274, 276. It can make no difference that there was a valid consideration for the contract to transfer the property by will. The imposition of the tax is not limited to property passing gratuitously by will, but extends to "all property" so passing. If the legislature had intended to limit the imposition of the tax to property passing gratuitously, it could easily have said so; but by providing that all property passing by will should be subject to the tax, it manifested an intention not to so limit it. *State Street Trust Co. v. Treasurer*, 209 Mass. 373; *Matter of Gould*, 156 N. Y. 423.

The same intention is manifested in the further provisions of section 1, which subject to the tax "all property . . . which shall pass . . . by deed, grant, sale, or gift, made or intended to take effect in possession or enjoyment after the death of the

grantor." The terms "deed" and "grant" do not indicate that the transfers must be gratuitous to be subject to the tax. · Transfers by such methods of conveyance are usually based upon a consideration, and a "sale" always is. The only limitation on the imposition of the tax upon such transfers, gratuitous or otherwise, would seem to be when they are not made or intended to take effect in possession or enjoyment after the death of the grantor, bargainor, or donor.

*Case discharged.*

June 3, 1913, the justices concurred in the foregoing opinion prepared by Mr. Justice *Bingham,* but invited argument on the question of the constitutionality of so much of section 1, chapter 68, Laws 1907, as taxes property passing other than by will or inheritance.

*James P. Tuttle,* attorney-general, and *Joseph S. Matthews (Mr. Matthews* orally), for the plaintiff.

*Moodybell S. Bennett* and *Cyrus A. Sulloway,* for the defendants.

Young, J. The issue as to which argument was invited involves the consideration of the effect of the bill of rights, when read in connection with the limitation on the power of the general court to make laws, contained in article 5 of the constitution. Does it forbid the making of laws that in any way limit rights secured to individuals by the bill of rights, or only the making of laws that limit such rights unreasonably?

It will be helpful in considering this question to remember that law is not an abstract entity, to which nothing can be added and from which nothing can be taken away; for there is no such thing as natural law, if by that is intended a body of rules to regulate human conduct, as old as humanity, and calculated to promote human justice at all times and in all stages of human development. There neither is nor can be such a body of rules, for laws necessarily change with the changes in industrial conditions and political theories. In other words, law is not an end in and of itself, but a means to an end, or the means lawmakers employ to effectuate their purposes. In short, law is made—not found, as Blackstone teaches (1 Bl. Com. 69)—to effectuate its maker's purposes; and the purpose the people had in view when they framed our constitution

was to promote the welfare of the community as a whole, not that
of any particular individual or class of individuals. With these
facts in mind, we are in a position to consider the limits within
which the legislature may act; or to be more specific, to inquire
whether the people who adopted the constitution intended to forbid
the state to tax the right to succeed to property when the conveyance
is not intended to take effect in possession or enjoyment in the
lifetime of the grantor, not for the purpose of raising a revenue,
but to prevent the use of such conveyances to avoid the payment
of a legal tax. Laws 1907, *c.* 68, *s.* 1. The defendants contend
that this proposition limits their right of freedom of contract, as
that right is secured to them by the bill of rights, and is for that
reason unconstitutional.

If it is conceded that the defendants' premises are sound, their
conclusion does not necessarily follow unless all laws that in any
way restrict individual freedom of action, as that right was under-
stood in 1783, are unconstitutional—that is, "repugnant or con-
trary to this constitution." Const., *art.* 5. The only rights an
individual has (or, for that matter, ever had) are the rights secured
to him by law. Therefore, the rights to life, liberty, and property
the people had in mind when they adopted the constitution were
those secured to them by existing laws. Const., *art.* 89 [90].
Consequently, the rights secured to individuals by the bill of
rights are their rights under the common law.

If the general court has no power to impose any limitations on
these rights that were unknown to the common law, then so much
of article 5 of the constitution as purports to confer the power to
make laws on the general court is worse than meaningless. If it
has no power to restrict in any way an individual's common-
law rights to life, liberty, and property, it has no power to make
laws; for the only way in which the lawmaker can effectuate his
purpose is to point out the things individuals must do or omit
if they would avoid liability. In other words, if the legislature
cannot impose any restrictions on the right of individuals to
freedom of action that were unknown to the common law, it
is absolutely powerless to accomplish the purpose for which it was
called into being.

As has already appeared, a law is not an end in and of itself, but a
means to an end; and the end the people had in view when they
adopted the constitution was to promote the public welfare. The
means they devised to effectuate that purpose was to create a legis-

lature and endow it with power to make reasonable and wholesome laws, and giving it that power was equivalent to giving it power to impose new limitations on individual freedom of action; for a law is a rule the state imposes on its citizens for the delimitation of interests, or to limit their rights and duties. Therefore, any rule that does not impose a limitation on the right of every individual who comes within its operation lacks an essential element of a law.

This fact should be kept in mind when considering the effect of the limitation in question. If the people had not intended to give the general court power to effectuate the purpose for which it was created, it is very improbable, to say the least, if they would have said: "Full power and authority are hereby given and granted to the general court . . . to make, ordain, and establish all manner of wholesome and reasonable orders, laws, statutes, ordinances, directions, and instructions . . . as they may judge for the benefit and welfare of this state and for the governing and ordering thereof and the subjects of the same." Const., *art.* 5. Can there be any doubt that the people supposed they were giving the general court power to make laws when they adopted article 5 of the constitution? And since the legislature cannot make a new law without imposing restrictions on the right of individuals to freedom of action that were unknown at common law, can there be any doubt but what the people intended to give it that power? In short, when the people gave the legislature power to make such reasonable and wholesome laws as it thinks will promote the public welfare, they necessarily gave it power to impose such reasonable and wholesome restrictions on the rights secured to individuals by the bill of rights as it thinks will be for the best interests of the community, notwithstanding such restrictions were unknown to the common law as it was understood in 1783. *State* v. *Normand,* 76 N. H. 541, 543; *State* v. *Roberts*, 74 N. H. 476; *State* v. *Cohen,* 73 N. H. 543; *State* v. *Dow*, 70 N. H. 286; *State* v. *Griffin*, 69 N. H. 1; *State* v. *Cate*, 58 N. H. 240; *State* v. *Clark*, 28 N. H. 176; *Pierce* v. *State*, 13 N. H. 536; *Mayo* v. *Wilson*, 1 N. H. 53, 57. Although the general court has power to change the common law, its power in this respect is limited both as to the purposes for which it may legislate (*Opinion of the Justices*, 76 N. H. 609; *State* v *Jackman,* 69 N. H. 318; *Curry* v. *Spencer*, 61 N. H. 624) and as to the means it may employ to effect its purpose. *State* v. *Silverman*, 76 N. H. 309; *State* v. *Ramseyer*, 73 N. H. 31; *Carter* v. *Colby*, 71 N. H. 230; *State* v. *Jackson*, 69 N. H. 511; *State* v. *Gerry*, 68 N. H. 495; *East Kingston* v. *Towle*, 48 N. H. 57.

The purpose the legislature had in view when it enacted section 1, chapter 68, Laws 1907, was to raise money to pay the expenses of the state by taxing the right to succeed to property passing by will or inheritance. It will not be necessary to consider the constitutionality of this purpose, for that is no longer an open question. *Thompson* v. *Kidder*, 74 N. H. 89. The purpose to tax this right included a purpose to prevent those who came under its provisions escaping the payment of the tax; and the means the legislature devised to effectuate the purpose was to tax the right to succeed to property passing by any conveyance not intended to take effect in possession or enjoyment in the lifetime of the grantor, the same as though it passed by will or inheritance. That is, the purpose the legislature had in view when it taxed the right to succeed to property passing by such a conveyance was not to raise a revenue, but to prevent the use of such conveyances to defraud the state. Therefore, the question on this branch of the case is not whether the state can tax the right to succeed to property passing by such conveyances for the purpose of raising a revenue, but whether it may penalize the use of conveyances calculated to defeat the collection of a lawful tax, in order to prevent their use for that purpose. The test usually employed in this state to determine the constitutionality, not of the purpose the legislature had in view when it enacted a statute, but of the means it employed to effectuate a constitutional purpose, is to inquire whether the restrictions it imposes on rights secured to individuals by the bill of rights are unreasonable (*State* v. *Normand*, 76 N. H. 541, 543), and not whether it imposes any restrictions on such right. If, as the defendants contend, this is not the test most courts apply for that purpose, it is enough to say that our constitution provides that the legislature may make reasonable and wholesome laws; and as has already appeared, that is but another way of saying that it may impose such reasonable and wholesome restrictions on the rights secured to individuals by the bill of rights as it thinks are for the best interests of the state. Further, the trend of modern opinion everywhere is in this direction. *Borgnis* v. *Company*, 147 Wis. 327; *State* v. *Clausen*, 65 Wash. 156; *State* v. *Superior Court*, 67 Wash. 37; *Chicago etc. R. R.* v. *McGuire*, 219 U. S. 549; *Noble State Bank* v. *Haskell*, 219 U. S. 104.

If we apply the test of reasonableness to the facts of this case, the issue is whether taxing the right to succeed to property passing by conveyances not intended to take effect in possession or enjoy-

ment in the lifetime of the grantor, not for the purpose of revenue, but to prevent the use of such conveyances to defeat the purpose of the act, constitutes an unreasonable interference with the right of freedom of contract secured to the defendants by the bill of rights; for no question is raised but what such conveyances are well adapted to defraud the state. Although the question of the reasonableness of the means employed to effect the purpose of the act is for the legislature—not the court—to determine, still if an act is so clearly unreasonable that the court can say no fair-minded man can think it reasonable, then and in that case the court must hold that the act is repugnant to the constitution; for the legislature cannot by its mere fiat make that reasonable which is indisputably unreasonable.

Since the legality of the tax imposed on the defendants depends on whether taxing property passing by such conveyances, to prevent their use to defraud the state, constitutes an unreasonable interference with the right of freedom of contract secured to them by the bill of rights, the test to determine the constitutionality of this provision of section 1, chapter 68, Laws 1907, is to inquire what the average man thinks of it; for any act such a man approves is wholesome and reasonable in the constitutional sense, notwithstanding it limits in some respects rights secured to individuals by the bill of rights. As has already appeared, the question of the reasonableness of the restrictions an act imposes on the rights secured to individuals by the bill of rights is for the legislature, not for the court. Consequently, the test to determine the constitutionality of the provision in question is not for the court to inquire whether it thinks taxing the right to succeed to property passing by such conveyances, in order to prevent their use to defraud the state, is an unreasonable interference with the right of freedom of contract, but whether it can say that that is what all fair-minded men think. The court not only cannot say that that is what such men think, but on the contrary can almost say all such men must agree that taxing this right for that purpose is the reasonable thing to do.

There is no merit in the contention that making the reasonableness of the limitation the test of constitutionality is to make the constitution mean one thing today and something different tomorrow. It is undoubtedly true that many acts that are sustained today would not have been sustained a hundred years ago; but that proves nothing except that industrial conditions, and political theories as well, are constantly changing. It has no tendency

to sustain the contention that the constitution does not mean the same today that it meant to the men who framed it, for the constitution does not forbid the legislature imposing new restrictions on the rights secured to individuals by the bill of rights. What it does forbid is imposing unreasonable restrictions on such rights. As has already appeared, the purpose the people had in view when they gave the general court power to make laws was to enable it to make such changes in the law as would promote the public welfare. They knew conditions were constantly changing, and that laws which were well adapted to promote the welfare of the people at that time might become wholly inadequate for that purpose; and for that reason they created a legislative body and gave it power to make laws, which includes the power to impose such reasonable and wholesome limitations on individual freedom of action as it thinks will promote the public welfare. They did not impose any other limitation on the power of the general court, in so far as the means to effect a constitutional purpose is concerned. They knew that the reasonableness of a law depends on the situation as it exists at the time the law is passed—not on the situation as it existed when the constitution was adopted. The men who framed the constitution knew they were legislating, not for the present, but for all time, and must have intended to give the legislature a reasonably free hand, in so far, at least, as the means it employed to effectuate a constitutional purpose is concerned.

The question of the test to determine the constitutionality of the legislative purpose has not been considered, and as to that question no opinion is intended to be expressed. The same is also true of the state's contention that the provision in question is valid as a revenue measure.

*Case discharged.*

All concurred.