Hillsborough County Probate Court
No. 84-020

*In re* ESTATE OF ZELLA SHAKA

October 5, 1984

*Gregory H. Smith*, attorney general (*Betsy S. Westgate*, assistant attorney general, on the brief, and *Leslie J. Ludtke*, assistant attorney general, orally), for the Department of Revenue Administration.

*Burns, Bryant, Hinchey, Cox & Shea*, of Dover, and *Craig, Wenners & McDowell*, of Manchester (*James H. Schulte* and *Vincent A. Wenners, Jr.*, on the brief, and *Mr. Schulte* orally), for Joan Aliapoulios and Napoleon Shaka.

KING, C.J. This case involves a challenge to an assessment of legacy and succession taxes made by the New Hampshire Department of Revenue Administration in the tentative amount of $19,615.86 against two recipients of a one-third share each of the estate of the decedent, Zella Shaka. The sole issue on appeal is whether a distribution of property from an estate made pursuant to a judicial decree enforcing an oral contract between the decedent and her husband to make a particular disposition of the estate at death is a taxable transfer under RSA chapter 86. We reverse the decision of the probate court and find the transfer taxable.

The facts in this case are not in dispute. Athan and Zella Shaka were married in 1921 and had one son, James, who was born in 1926. Athan Shaka, prior to his marriage to Zella, already had two children by a previous marriage, a daughter, Ora, and a son, Napoleon. In 1945, Athan and Zella Shaka entered into an oral agreement to execute mutual irrevocable wills leaving all of their property to the survivor of them and then to Athan's three children in equal shares.

Athan Shaka died in 1947 and, pursuant to his will, his entire estate was distributed to Zella. Zella executed a total of three wills, one in 1945 and two more, subsequent to Athan's death, in 1965 and 1973. None of these wills, however, satisfied the terms of her agreement with Athan, in that none of them left her estate to Athan's three children in equal shares. Upon Zella's death in 1975, her 1973 will was admitted to probate. Under this will, Napoleon, her stepson, was given ten thousand dollars, Joan Aliapoulios, the only child of her stepdaughter, Ora, who died in 1973, was given two thousand dollars, a niece was left one thousand dollars and the entire residue was left to her son, James. The total estate amounted to approximately two hundred and fifty thousand dollars ($250,000).

Napoleon Shaka and Joan Aliapoulios, the taxpayers herein, brought a bill in equity in the superior court to enforce the terms of the oral agreement entered into by Zella with their father, Athan Shaka, to provide for a one-third distribution to each of them by will. The superior court found that Zella had contracted with Athan

to leave her estate by will to Athan's three children in equal shares, and therefore enforced the terms of the contract by entering a decree dividing her estate equally between his three children: Napoleon, Joan and James. The court further decreed that the executor was to hold the estate's assets in a constructive trust for the three children and was to distribute these assets in accordance with the decree. The trial court's decree was upheld by this court in *Shaka v. Shaka*, 120 N.H. 780, 424 A.2d 802 (1980).

An appeal from the probate of Zella Shaka's 1973 will, which had been filed by Napoleon Shaka and Joan Aliapoulios, was withdrawn. The probate of the will was never disturbed nor set aside. Instead, the taxpayers received their respective shares in the decedent's estate in the manner set forth in the superior court decree, rather than under the express terms of Zella's will. Neither Napoleon Shaka nor Joan Aliapoulios is an heir at law of Zella Shaka.

The State Department of Revenue Administration (the department) determined that a legacy and succession tax in the tentative amount of $19,615.86, including interest, was due on the two distributions to Napoleon and Joan. The taxpayers challenged the determination that these distributions were taxable, and by order dated December 13, 1983, the Hillsborough County Probate Court (*Cloutier*, J.) held that the transfers were not subject to tax. The department herewith appeals that determination in accordance with Supreme Court Rule 7.

On appeal, the department argues (1) that the transfers of property from Zella Shaka to Napoleon Shaka and Joan Aliapoulios have occurred in such a manner as to render them taxable transfers under the provisions of RSA 86:6, I (Supp. 1983) and (2) that the transfers, being from Zella Shaka to her stepchildren, who are not her lineal descendants, are therefore not exempt from the tax pursuant to RSA 86:6, II(b) (Supp. 1983).

RSA 86:6, I (Supp. 1983) imposes a legacy and succession tax upon:

> "[a]ll property . . . which shall pass by will, or by the laws regulating intestate successions, or by deed, grant, bargain, sale or gift, made in contemplation of death, or made or intended to take effect in possession or enjoyment at or after the death of the grantor . . . to any person, absolutely or in trust . . . ."

The first contention raised by the department on appeal is that the transfers of Zella's property to Napoleon and Joan, made pursuant to a judicial decree enforcing the decedent's oral agreement with Athan Shaka, are taxable transfers under the provisions of RSA

86:6, I (Supp. 1983), having occurred *by will*. In support of its position, the department relies upon a similar case resolved by the Court of Appeals of New York entitled *Matter of Kidd*, 188 N.Y. 274, 80 N.E. 924 (1907).

In *Kidd*, a stepdaughter of the decedent brought an action against the executors and trustees of the decedent's will and the other beneficiaries thereunder, alleging that the decedent had previously entered into an antenuptial agreement with her mother, whereby, "in consideration of the marriage and the promise of her mother to turn over to him the sum of $40,000 to be used in his business, [the decedent] agreed 'that he would adopt [the plaintiff], give her his name, and make her his heir . . . .'" *Id.* at 277, 80 N.E. at 924. The decedent, however, failed to perform his part of the agreement. *Id.* The trial court found the facts to be as alleged and, accordingly, entered a judgment declaring the antenuptial contract valid, "entitling the plaintiff to all the property, real and personal, of which the decedent died seised or possessed, and directing the defendants to execute and deliver to the plaintiff all necessary releases and conveyances of said property." *Id.* at 277-78, 80 N.E. at 924.

Thereafter, the executor of the decedent's will and the plaintiff in *Kidd* instituted a proceeding to have the estate declared exempt from taxation. The court of appeals ultimately held that the estate was liable for the transfer tax, stating:

> "The contract between the plaintiff's mother and the deceased, which has been enforced by the judgment of the Supreme Court, was to bequeath and devise to his step-daughter, by will, either the whole property he might leave or a portion of it, dependent on the existence of other children. It was not a contract to convey, but a contract to make a will in her favor. Had the deceased performed his agreement and given her his property by will, the estate would have been subject to the tax . . . .
>
> It does not affect the question of the liability of the estate to taxation that, in consequence of the failure of the testator to carry out his promise, [the plaintiff] was obligated to resort to a court for relief. The method by which a court of equity in a proper case . . . enforces an agreement of the character of the one before us is well settled. It does not set aside the will, for in the present case such a judgment would do the plaintiff . . . no good, for she was neither heir at law nor next of kin; but it converts the devisees under the will, or the heirs at law or next of kin, as the case may require, into trustees for the beneficiary

under the original agreement . . . . Therefore the devolu-
tion of the property has in fact taken place under the will,
and such devolution is subject to the transfer tax."

*Id.* at 278–80, 80 N.E. at 924–25. We find that the transfers to Napo-
leon Shaka and Joan Aliapoulios, in the intent case, have similarly
taken place under the will of Zella Shaka and are therefore subject
to the transfer tax imposed by RSA chapter 86.

Zella Shaka did not contract to convey her property to Athan's
three children, but, rather, contracted to make a will in their favor,
transferring her property to each of them in equal shares. Had Zella
performed her agreement, and given her property by will, her es-
tate would have been subject to the transfer tax imposed by RSA
chapter 86. *See Carter v. Craig,* 77 N.H. 200, 90 A. 598 (1914) (*all*
property passing by will subject to tax). We find, in agreement with
the Court of Appeals of New York and other courts, that the failure
of Zella to perform in accordance with her contract with Athan,
thereby forcing Napoleon and Joan to resort to the courts for relief,
does not affect the liability of the estate to taxation. *See Daum v.
Inheritance Tax Comm.,* 135 Kan. 210, 9 P.2d 992 (1932); *Matter of
Kidd,* 188 N.Y. 274, 80 N.E. 924 (1907). *But see In re Soden,* 105 N.J.
Eq. 595, 148 A. 12 (1929).

The trial court in this case did not set aside Zella Shaka's
will, but, rather, in effect, imposed a constructive trust, transform-
ing the beneficiaries under Zella's will into trustees, holding two-
thirds of her property for the benefit of Napoleon Shaka and Joan
Aliapoulios. We find that the transfers of property to Napoleon and
Joan took place pursuant to Zella's will and are therefore taxable
transfers under RSA 86:6, I (Supp. 1983). Based upon this holding,
we need not address the department's alternative argument for lia-
bility, that Zella's property passed to Napoleon and Joan by means
of a "bargain."

The taxpayers in this case further suggest that even if the prop-
erty in question did pass to them "by will" or by means of a "bar-
gain," the transfers remain non-taxable. They contend that, in actu-
ality, they received their shares in the estate directly from Athan,
and not from Zella, and that they are therefore exempt beneficiaries
as his natural children and lineal descendants. RSA 86:6, II(b)
(Supp. 1983). In support of this argument, the taxpayers attempt to
characterize Zella's interest in the property as either a life estate or
as that of a trustee for the benefit of the children. We find, however,
that these characterizations are not supported either by the facts as
presented or by law.

In the instant case, Athan Shaka's will made an absolute gift of

his entire estate to Zella. The will contained no limitations on Zella's use of the property, nor did it limit her rights in the estate to that of a life tenant or a trustee. The oral agreement between Zella and Athan, also found to exist by the trial court, likewise did not operate to limit Zella's interest in Athan's estate. The agreement contained no provisions explicitly restricting Zella's interest in the property. Rather, the agreement simply bound Zella, upon death, to leave her estate in equal shares to Athan's three children. The trial court described the contract as one "to make mutually irrevocable wills *leaving the estate of the survivor to [the three children]* in equal shares per stirpes." (Emphasis added.)

Athan Shaka could have arranged for the disposition of his estate to his children in a direct and non-taxable manner by providing in his own will for Zella to receive the property as a life tenant or as a trustee, with the property to pass directly to his children upon her death. By means of his oral agreement with Zella, he also could have explicitly limited her rights to the property by requiring, for instance, that she consume only so much of the property as might be necessary for her comfort and support. *See Estate of Rath,* 10 Cal. 2d 399, 404, 75 P.2d 509, 511 (1937). Athan, however, merely arranged for Zella to make the intended disposition of her estate upon her death. An assumption or expression of confidence of this sort that the property will be used in a certain way does not automatically create a trust.

■ We find that the taxpayers in this case did not obtain, as they contend, vested rights in the property in question either at the time the oral agreement between Athan and Zella was made or upon Athan Shaka's death. Rather, the shares obtained by Napoleon and Joan were obtained directly from Zella, who received full title to the property free and clear at Athan's death, with the sole limitation being that she devise any remainder at her death to Athan's three children.

We accordingly reverse the decision of the probate court and find the transfers in question taxable.

*Reversed.*

BATCHELDER, J., did not sit; the others concurred.